Nella M. Blue and Charles Blue, Plaintiffs-Appellees, v. St. Clair Country Club, Defendant-Appellant.

Term No. 54-O-21.

Fourth District.

February 1, 1955.

Released for publication March 3, 1955.

Pope and Driemeyer, of East St. Louis, for appellant; Frank M. Rain, of East St. Louis, of counsel.

Williams and Walker, and Kramer, Campbell, Costello & Wiechert, all of East St. Louis, for appellees.

MR. JUSTICE BARDENS delivered the opinion of the court.

Plaintiffs, who are members of the defendant country club, sued to recover damages for personal injuries sustained by Nella M. Blue and losses incidental thereto sustained by her husband, Charles Blue, the personal injuries having been suffered by plaintiff while she was on the club grounds and using the club equipment. Judgments were entered on jury verdicts in favor of both plaintiffs. It is from such judgments that this appeal is perfected.

The evidence shows that the defendant country club owns real estate and personal property which it maintains for its members and guests. In addition to the clubhouse and other facilities in connection with the golf course and tennis courts, the club maintains a swimming and bathing pool and a sun bathing and refreshment area where it provides tables and chairs, the tables being the type that accommodate large sun umbrellas. The accident in question happened in an area in front of the clubhouse wherein there was an outdoor concrete dance floor surrounded with a grassy area upon which area were situated the umbrella tables in question.

On the day of the accident in question, namely, July 13, 1952, two types of umbrellas were in use. Each type had a shaft which went through a hole or holes in the table. On one type the shaft was pointed at the bottom and was known as the spear or pin type umbrella. The other type was designated as the auger type. The shafts of all the umbrellas were the same length, as were the ribs and the canvas covering. All of the umbrellas were placed through a hole in the top of the center of a metal table and then through another hole or two lower in the table. The spear type of umbrella was held in the ground only by whatever frictional force existed and was applied to it when the point was inserted into the ground. The auger type, after being placed through holes in the table, was affixed to another shaft which was augered or screwed into the ground

to a depth of one foot or more, and then a pin was placed through the shaft of the umbrella and its companion piece in order to hold the umbrella and table more firmly. Prior to June of 1952 the club had only the one type of umbrella, namely, the spear type. The auger type was not available prior to that time. However, in June of 1952 the club purchased four of the auger type umbrellas and these were installed in the sun bathing area, but a further distance from the concrete dance floor than the spear type umbrellas were ordinarily used.

The evidence shows that there were three types of tables used which varied in weight, diameter, and number of holes through which the umbrella shafts were inserted. The evidence also showed that the spear type of umbrellas would become disengaged from the ground with very little pressure because of the small frictional force that existed and because the point could only be jabbed into the dry ground an inch or an inch and one-half. These umbrellas would frequently tip over in any wind that was more than gentle, and the evidence showed that the subject of the tipping over had been discussed between several employees of the club and some of the officers of the club. On the other hand, the evidence showed that even in a strong wind the shafts on the auger type umbrellas would stay affixed to the ground, but the stays would turn inside out and the canvas would be stripped therefrom.

On July 13, 1952, Mr. and Mrs. Blue, the plaintiffs, and their nine-year-old son arrived at the club about noon or a little before. Mr. Blue proceeded to play golf and Mrs. Blue and her son alternately swam in the pool and sun bathed. Immediately before the accident to Mrs. Blue she was seated adjacent to the dance floor at a metal table which was equipped with a spear type umbrella. With her were two other ladies. The weather was and had been for a considerable time hot and dry. Just before Mrs. Blue was injured the other

ladies had left the table. About this time it started to rain and a wind started to blow. In describing the velocity of this wind, the plaintiffs' witnesses did not seek to characterize the wind, but described the effect of the wind in telling of the wobbling of the tables, the blowing over of all of the spear type umbrellas, the carrying of one of the umbrellas a distance of 75 feet after the umbrella was raised ten or fifteen feet in the air, the bending of one of the shafts on the auger type umbrella, and the complete stripping of the canvas of two of the auger type umbrellas. Defendant's witnesses described the velocity of the wind in phrases such as "whirlwind" and one witness even designated it as "tornado." In any event, the umbrella at the table where Mrs. Blue was seated started to wobble back and forth and Mrs. Blue arose from the chair and started to reach up to close the umbrella at her table so as to reduce the effect of the wind upon it. Just as she was leaning over the table and in the act of reaching up to close the umbrella, a Mrs. Reiners, who had previously been seated at the same table, called to her boy who was in the swimming pool and Mrs. Blue then called to her boy who was also swimming. At this time a gust of wind hit the umbrella, lifting the table against Mrs. Blue, knocking her over backwards upon the ground with the table and chair on top of or alongside of her, and causing her very serious injuries which are the basis of this suit.

In addition to the members and employees of the club who testified on plaintiff's behalf, plaintiff also introduced a civil engineer who had drawn a plat of the club area involved and introduced testimony of a mechanical engineer whose calculations showed the effect of air velocity as applied to the types of umbrellas in use at the club.

Plaintiffs' complaint charges negligence of the defendant in five different sub-paragraphs as follows:

289

"(a) it did fail and omit to provide a proper sun umbrella firmly anchored at the table where plaintiff was seated;

"(b) it did fail and omit to furnish and provide a proper anchoring of the sun umbrella at plaintiff's table when it knew or should have known in the exercise of ordinary care that wind gusts such as occurred at the time and place aforesaid might occur, and could be reasonably expected;

"(c) it did fail and omit to furnish and provide a safe and suitable anchor for the sun umbrella placed by it at the table occupied by plaintiff, when it knew it had purchased and had placed in service sun umbrellas with safe and suitable anchors designed to reasonably withstand the aforesaid wind gusts;

"(d) it did not furnish for plaintiff's use, as aforesaid, a reasonably safe place to sit in the open outdoor area heretofore described."

Defendant filed an answer denying the negligence charges of the complaint and setting up as a separate defense an allegation that the sole proximate cause of the injuries to the plaintiff was an "act of God," Mrs. Blue's own negligence, or a combination of both.

The defendant now contends that the lower court committed error in refusing to direct a verdict or to enter judgment notwithstanding the verdict because, it asserts, no negligence of the defendant is shown. In the alternative defendant asks for a new trial because of a refusal of defendant's offered instruction on the question of "act of God" and because of the introduction of improper and prejudicial evidence and because the verdict is contrary to the manifest weight of the evidence.

██ In connection with defendant's contention that the lower court should have entered judgment notwithstanding the verdict, it is, of course, a familiar rule that defendants would be entitled to that motion or to

a motion for a directed verdict only if there is a total failure or lack of evidence to prove a necessary element of plaintiff's case, when all the evidence is considered, together with all reasonable inferences therefrom, in its aspect most favorable to plaintiff. Bonnier v. Chicago B. & Q. R. R. Co., 2 Ill.2d 606, 119 N.E.2d 254. Defendant insists that the evidence discloses that it was guilty of no negligence whatsoever, but that even if guilty of negligence that its negligence was in no event the proximate cause of the injuries for the reason that the action of the elements intervened to create an "act of God" which in itself was the proximate cause of the accident.

An examination of the allegations of negligence made by plaintiffs establishes that their case rests primarily on the following propositions:

1. that defendant was negligent in not firmly anchoring the spear type umbrella here involved;

2. that defendant was negligent in continuing to use the spear type umbrella after the auger type became available;

3. that defendant was negligent in not anticipating wind gusts and their effect on the unanchored spear type tables.

No claim is made that the equipment was defective nor of any contemporary negligent act.

██ ██ As to the first proposition, the failure to firmly anchor the spear type umbrella, we believe it can fairly be said to be a matter of common knowledge that this type of umbrella and table could be purchased for use on patios or terraces with a shaft having no point or other anchoring device whatsoever. It is also quite usual to make and furnish outdoor equipment in lightweight materials so that those using it or furnishing it for use to patrons might move it about with ease. In fact evidence here showed that the club members frequently moved the tables about to suit their conven-

ience. Certainly, such an umbrella cannot be said to be inherently dangerous whether it has any means of anchoring it or not. Therefore, it cannot be said that there was a legal duty upon the defendant to anchor all umbrella tables in use on its premises.

██ Plaintiffs' second proposition of negligence involves a comparison in safety between the spear type umbrella which was being used by the plaintiff and the auger type of umbrella which had been purchased by the club about four weeks prior to the accident. It is unquestionably true that the auger type umbrella is a safer piece of equipment. However, proof that there is better equipment than that involved in an accident is not the pertinent inquiry to be made in adjudging the equipment involved in the accident, and plaintiffs concede that defendant need not necessarily furnish the latest equipment. Doucette v. Vincent, 194 F.2d 834, 837; Jacob v. City of New York, 315 U. S. 752, 86 L. Ed. 1166. It would be a dangerous precedent to give any considerable weight to the fact that there was in existence a safer piece of equipment. One can see the disastrous result of such a rule to our economy and to our whole pattern of adjudging conduct. To illustrate, we need consider only the devastating effect on the use of the automobile of a rule that negligence is attributable to the omission from a car of every new invention or device which promotes safety. No car, under these circumstances, except the latest model could escape the charge of liability on that ground. The spear type umbrella equipment selected by the defendant prior to June of 1952 was that commonly used and was therefore considered safe and suitable for the purpose for which it was furnished under the existing conditions involved. The fact that defendant bought safer equipment in June of 1952 which was not previously available does not operate then to show negligence of the defendant in its use of other equipment it already possessed. This is especially true in the face of no evi-

dence to show that the older equipment had ever previously caused any injury of which the defendant had knowledge. In addition, the evidence indicates that the auger type umbrella was purchased to prevent the club members from moving the tables around on the terrace and to prevent damage to the equipment itself resulting from its being blown over. Having had no prior instances of personal injury resulting from tables being blown over, there is no reason to suppose the new tables were purchased to avoid injury to club members. Yet the portion of the pleadings and evidence devoted to a comparison of the merits and safety of the two umbrella tables suggests this fact as a basis of liability on defendant's part. It is our conclusion, however, that defendant was not negligent in continuing to use spear type umbrella tables even though the auger type table was available.

 Plaintiffs' third contention that defendant was negligent in its failure to anticipate the effect of gusts of wind on the spear type umbrellas injects the element of an act of nature, which defendant pleaded as an affirmative defense. To constitute a defense the law requires that such act must be the sole proximate cause (Sandy v. Lake St. El. Ry. Co., 235 Ill. 194, 202), and if it is a concurring cause together with an act of negligence, it is not sufficient as a defense. Wald v. Pittsburg, C. C. & St. L. R. Co., 162 Ill. 545. The test of liability when an act of negligence concurs with an "act of God" or any other intervening act is the foreseeability of the alleged intervening act. Berg v. New York Cent. R. R. Co., 391 Ill. 52; Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300. The test of negligence generally is also a question of foreseeability; that is, whether a prudent person would have reasonably foreseen the probability of the injury that occurred. Berg v. New York Cent. R. R. Co.; Hays v. Place, 350 Ill. App. 504, 113 N.E.2d 178. It would of course be perfectly apparent to a reasonably prudent person that

293

a strong wind would tip the table over. It therefore is unnecessary to determine here whether or not the wind on the day of injury was of such intensity and suddenness as to be termed "an act of God." The material inquiry is as to the foreseeability of injury to someone resulting from an umbrella table blowing over. To prove that the defendant should have anticipated the table tipping over in a gust of wind is not enough. It is an accepted fact that lawn equipment is often overturned in windstorms. Yet negligence is not attributable to the failure to anchor lawn chairs since injury to one from such an article blowing over is not to be reasonably anticipated. In the case of lawn furniture, it is not the usual thing that it be anchored, nor that injury result from its being blown over.

 As an invitee, plaintiff assumed all the normal, ordinary and obvious risks attendant upon the use of defendant's premises. Dargie v. East End Bolders Club, 346 Ill. App. 480, 105 N.E.2d 537, 65 C. J. S., Negligence, par. 50, page 542; 38 Am. Juris., Negligence, par. 97, page 757. That the equipment being used here was equipment in common use for sun bathing areas, that it frequently tipped over and blew away in a strong wind, that the employees of the defendant were instructed to put down the umbrellas at the first sign of rain or strong wind, that it was usual and customary for people to abandon this type of equipment at the first sign of storm or wind, that a storm came up suddenly and that the wind was intense, all can admit of no contradiction. Had it been reasonable to foresee personal injury resulting from such situation it is equally reasonable to surmise that plaintiff would have left the table and sought safety. Under such circumstances we see no basis for any duty on defendant's part to anticipate injury to an invitee on the premises resulting from its use of an umbrella table assembly.

 In this connection it is interesting to note the absence of recorded cases of similar injury. Neither the

294

briefs of the parties nor our research have located such a case. Such fact of course is not the controlling factor in measuring defendant's duty under the circumstances, but it is a fact of practical significance. Plaintiff does bring to our attention the case of Brewer v. United States, 108 F. Supp. 889, where a sun umbrella blew off an elevated lifeguard tower at a swimming pool and struck a patron causing fatal injuries. The court held the defendant liable for such death but explicitly based its judgment on ample proof of defendant's negligence in failing to repair the metal clasp which originally permitted the rigid holding of the umbrella to the lifeguard stand. In the Brewer case the umbrella was designed to be fastened securely to the lifeguard stand and though originally so secured, the clasp mechanism had been permitted to fall into disrepair. There existed a situation of active negligence in failing to fasten the umbrella as originally intended. The injury in the Brewer case came from an instrument with which the injured party had no prior contact and which was not used by the patrons, and not for their use. In the instant case the plaintiff, as a member of the club, well knew the equipment, was closest to the umbrella, and was in the very best position to observe the effect of the increasing wind upon it and the table.

One's sympathies are naturally aroused when confronted with the injuries suffered by the plaintiff in this case and undoubtedly such feeling, together with the evidence of the safer auger type umbrella table, in large measure resulted in the finding against defendant. We must conclude, however, that plaintiff's injury was sustained without negligence of the defendant and, therefore, is not compensable at law at its hands.

For the reasons set out, the judgments of the trial court are reversed.

Judgments reversed.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.