Marguerite Dargie, an Infant, by Florence Dargie, her Next Friend, Plaintiff-Appellee, v. East End Bolders Club, Defendant-Appellant.

Gen. No. 10,513.

Opinion filed March 4, 1952.
Rehearing denied May 7, 1952. Released for publication May 7, 1952.

WAYNE G. COOK, BERNARD F. BALLUFF, and HAROLD D. WEDEAN, all of Davenport, Iowa, for appellant.

WOOD, MCNEAL & WARNER, of Moline, for appellee; DAN H. MCNEAL, and WILMOT F. WARNER, both of Moline, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

Plaintiff, Marguerite Dargie, an infant, by her mother and next friend, brought this action against defendant, East End Bolders Club, a corporation, in the circuit court of Rock Island county to recover

damages for injuries and burns which she sustained when her right leg became wedged between a wall and a steam radiator located in the ladies' rest room of the defendant's building.

Plaintiff's complaint, although consisting of only one Count, was predicated upon two theories of liability, one theory being the maintenance by the defendant of an attractive nuisance upon its premises and the other being negligence on the part of the defendant in failing to maintain its premises in a reasonably safe manner and condition. The complaint alleged that the defendant was the owner of a certain building and the equipment therein, which building was used, maintained and controlled by the defendant as a club for the benefit of the members thereof and the wives and children of the members; that said building consisted of a number of rooms, one of which was a ladies' rest room about five feet by eight feet in size and which was located at the west side of said building; that said rest room was equipped with a steam radiator three and one-half inches thick, twenty-five inches in width, twenty-four and one-half inches in height, located at a distance of about two and one-half inches from the west wall of the ladies' rest room; that there was a window in the west wall of said rest room twenty-six inches wide and forty-eight inches high, and that the lower edge of the window was fifty-one and one-half inches above the floor of the room and twenty-seven inches above the top of the radiator; that the building of defendant was located in a populous section of the City of Moline and numerous persons, children, vehicles, and other traffic habitually passed along the streets on the outside of said building, which streets could be readily seen from the window in the said room; that the defendant kept a covered metal refuse can about ten inches in diameter and thirteen inches in height in said rest room; that the said refuse can

was so located in said rest room that it and the radiator formed steps to said window, all of which was attractive to children of tender years and amounted to an implied invitation to them to climb upon the can and radiator in order to look out of the window to see persons and vehicles and traffic moving on the adjoining streets; that when steam was turned into said radiator it became extremely hot and constituted a great danger to children; that ordinary care required that when children were in said rest room defendant should remove the refuse can from the rest room, or cover the radiator therein with a guard, or maintain an attendant in the rest room to prevent children from climbing upon said refuse can and radiator, or turn off the steam from said radiator, or close the rest room to children. The complaint then alleged that it was practicable for the defendant to have taken one or all of these precautions for the purpose of preventing children from being injured and that it was defendant's duty to do so.

The complaint then alleged that the defendant, upon the occasion in question and not regarding its duty, wrongfully, negligently and improperly failed to remove said refuse can from the rest room, failed and neglected to cover said radiator with a guard or cover, failed and neglected to maintain an attendant in and around said rest room, failed and neglected to turn off the steam from said radiator, and failed and neglected to close the rest room to children. It was then alleged that the plaintiff was a female child, born December 17, 1943; that on the 10th day of May, 1947, she was lawfully on the premises of the defendant and was entitled to use the facilities and conveniences of the defendant's building as a guest and invitee of the defendant and that while she was in the defendant's building she entered the ladies' rest room and, as a direct result of the defendant's maintenance of an

attractive nuisance and its negligence as charged, plaintiff climbed upon said refuse can and then upon the radiator in order to look out of the window; that she then and there slipped off the top of the radiator and down between the radiator and wall, and her right knee and leg became wedged between the wall and hot radiator and, as a consequence, she suffered severe and permanent injuries.

The defendant by its answer admitted that the plaintiff's presence in its club rooms was lawful when accompanied by her father and mother, avers that her parents were responsible for protecting her against dangers which could only arise through her incapacity to exercise proper care and judgment for her own safety, denied that it maintained any attractive nuisance on its premises, and denied that it was guilty of any of the acts of negligence charged by the plaintiff. The answer averred that it maintained its premises in a good and safe condition; that the radiator referred to in the complaint was not defective, that its installation and location were in accordance with standard and approved practice and offered no danger other than inheres in any heating device; that it was necessary to provide in the rest room a receptacle for disposing of used papers towels and that this receptacle was of the ordinary and usual type and offered no inherent danger, and avers that if the plaintiff sustained injuries in the manner alleged in the complaint, the same were incurred because of the act of the plaintiff and were not the proximate result of any act or omission of the defendant.

The cause was tried by a jury, resulting in a verdict in favor of the plaintiff and against the defendant for $2,500. After overruling defendant's motions for a directed verdict and judgment notwithstanding the verdict, the trial court rendered judgment on the verdict, and this appeal follows.

There is no conflict in the evidence. The plaintiff is a girl scarcely three years and five months of age and approximately thirty-five inches tall at the time she was injured. The defendant operates a family club, of which the father of the plaintiff was treasurer and director and he occasionally helped tend bar. The mother of the plaintiff was a member of the auxilliary. Children of all ages under eighteen were permitted to accompany their parents to the club rooms, and the parents or small children frequently brought with them toys, cards and paper dolls. On the morning of May 10, 1947, the plaintiff, accompanied by her parents, went to the club rooms, arriving there about eleven thirty o'clock. The father went to the barroom to get a bottle of beer, while the mother sat at a table in another room. Shortly after their arrival, plaintiff told her mother she had to go to the toilet. The mother got up from the chair where she was sitting to go with her, but the child said she was going by herself and did so, and after she entered the rest room the door between it and the room where the mother was sitting swung shut. The mother seated herself at a table about two steps from the door. After being in the rest room four or five minutes the mother heard the plaintiff yell "Mommy," and the mother pushed open the door and entered the toilet room and there found the plaintiff straddling the radiator with her right leg wedged between the radiator and the wall and with her hands she was holding on to the wash basin.

The evidence further discloses that this rest room is located on the west side of the building, and the door leading to it was at the northwest corner thereof in the north wall. The lavatory, or wash basin, was on the south wall. The rest room was about five feet wide and eight feet long. On the west wall was an ordinary window twenty-six inches wide and forty-eight inches high and about fifty-one inches from the floor. On the

occasion in question, the window was open about eight inches from the bottom. Immediately underneath the window was a steam radiator resting on the floor and twenty-four inches high, so the top of the radiator was twenty-seven inches below the sill of the window. On the day of the accident the steam was turned on and the radiator was quite hot. In response to the call of the plaintiff, the mother went into the rest room and saw the plaintiff astride the radiator, her right leg being in the space between the radiator and the wall. She also observed a covered metal refuse can in front of the radiator. This can was thirteen inches in height and ten and one-half inches in diameter. The space between the radiator and wall was two and one-half inches. The building which housed the defendant club was located in a populous part of the city of Moline, and there was considerable traffic in the streets on two sides of the building. While plaintiff was in the rest room her mother observed through a window, located in the room where she was sitting, a couple of decorated cars travelling along the street and heard the honking of the horns on these cars.

Counsel for the plaintiff in their argument state that the heated radiator was a dangerous appliance; that the waste can was located near the radiator, and the radiator was located near the window; that the can and radiator formed steps to the window; that the position, or location, of these objects was tempting and alluring to the plaintiff and amounted to an implied invitation by the defendant to the plaintiff to climb upon the can and then upon the radiator for the purpose of looking out the window to see the traffic on the street below; that this childish impulse to look out of the window irresistibly impelled plaintiff to a place of danger astride defendant's hot radiator; that the inherent dangerous instrumentality was the hot radiator, and that defendant's liability for the injur-

ies sustained by the plaintiff arises out of its control over the location of the items constituting the allurement and attraction and its control over the steam flowing through the radiator. Counsel state that the general rule is that the owner of property who directly, or by implication, invites another to come upon his premises owes his invitee a duty to exercise ordinary care for his safety while on his premises; that the combination of waste can, radiator and window should have been recognized by defendant as an attraction to children, and defendant should have taken proper safeguards to have avoided the injury which plaintiff sustained; that the questions of attraction and whether proper safeguards were taken or, if not, could have been taken and whether defendant should have forseen that an accident might happen or could have been reasonably anticipated were proper questions to be considered by the jury in determining the question of defendant's negligence and were so considered and resolved by the jury against the defendant, and the finding of the jury should not be disturbed by this court.

In support of this contention, counsel for appellee cite and rely upon *Howlett v. Dorchester Trust Co.,* 256 Mass. 544, 152 N. E. 895. In that case the plaintiff was a boy two and one-half years of age who had accompanied his mother to the defendant's bank. While in the bank the mother left the plaintiff on a bench located near a hot, unguarded radiator. The mother then went to the cashier's window, not more than twenty-five feet away from the bench, to make deposits for herself and for members of her family including the plaintiff. While the mother was making the deposits but before she had made a deposit for the plaintiff, the plaintiff in some unexplained way came off the bench and in contact with the radiator suffering burns and injuries for which he brought suit. In

487

sustaining a verdict in favor of the plaintiff, a majority of the Supreme Judicial Court of Massachusetts said: "It (the defendant) was not an insurer, neither did it owe to anyone the high degree of care owed by a carrier to a passenger. At the most it owed only the duty to furnish a reasonably safe place for the use of those invited to its premises and to refrain from wilful and wanton negligence toward those licensed to be upon them." (Citing cases.) The court then held that plaintiff's status was that of an invitee and concluded: "It remains to decide whether there was any negligence on the defendant's part and although the question is close, upon the evidence it was for the jury to say whether the existing combination of bench and unguarded radiator was reasonably safe. We cannot say, as a matter of law, that the facts admit of but one interpretation and establish that the place was kept reasonably safe."

Counsel for defendant contend that there is no evidence in the record establishing any negligence or want of care on the part of the defendant; that the attractive nuisance doctrine is inapplicable; that the radiator was not an inherently dangerous instrumentality; that the radiator, refuse can and window were all in common use by people generally and their presence in the rest room imposed no obligation upon defendant to exercise any greater degree of care than it did exercise and the presence of the radiator and waste can in the rest room was not an invitation upon the part of the defendant to the plaintiff to use the can and radiator for steps to the window.

██ The motion of defendant for a directed verdict and its motion for judgment notwithstanding the verdict presented to the trial court the single question whether there was in the record any evidence which standing alone and taken with all its intendments most favorable to the party resisting the motions, tends

to prove the material elements of her case. (*Lindroth v. Walgreen Co.,* 407 Ill. 121, 130.)

The complaint in the instant case, based upon negligence, charges first: That the defendant failed to remove from its rest room a covered, metal refuse can about ten inches in diameter and thirteen inches in height; second, that the defendant failed to cover a steam radiator in the rest room with a guard; third, that the defendant failed to maintain an attendant in the rest room; fourth, that defendant failed to turn the steam off the radiator, and fifth: that defendant failed to close the rest room to children. No affirmative act of negligence is alleged. In order to sustain the judgment of the trial court we must conclude that the defendant was negligent because it had in its rest room a small ordinary covered metal waste can or basket or that it was negligent because it had in its rest room an ordinary steam radiator, uncovered and unguarded, such as is in use generally or that it was negligent in not furnishing plaintiff an attendant when she was in defendant's rest room, or that it was negligent in heating its rest room by a method having universal acceptance or that it was negligent in not refusing plaintiff admittance to its rest room or because of a combination of these acts or omissions.

██ The duty which defendant owed the plaintiff, an infant invitee, was to use ordinary or reasonable care to have its premises in a reasonably safe condition. (38 Am. Jur. Neg., sec. 96, p. 754; 65 C. J. S. Neg., secs. 45b, 52, pp. 526, 548.) By its verdict the jury found that the defendant did not use ordinary care to have its rest room in a reasonably safe condition. The objects in that room complained of were the covered metal refuse can and the radiator. No one was in the rest room when plaintiff entered it. What she did there is left to conjecture. When she was next seen she was astride the radiator. The radiator

was hot. It was being used for the only purpose for which it was intended. There was no escaping steam. The radiator was in no way defective. Its installation and location were in accordance with approved and standard practice. It was no more dangerous than any heating device and the refuse can was a necessary receptacle for disposing of used paper towels and was of the ordinary and usual type in common use. An "invitee assumes all normal, obvious or ordinary risks attendant on the use of the premises." (65 C. J. S. Neg., sec. 50, pp. 542, 543.)

 Negligence is the common-law term used to express the foundation of civil liability for injury to person and property. As the term is used in the law, negligence is a wrong which constitutes a ground of legal liability. One who suffers an injury to his person through the act of another person in which the requisite elements of negligence and proximate cause are present has a cause of action against such other person. The wrong lies in the conduct of the person charged and the liability imposed, is an incident of his act or omission to act. "There are many instances of injuries to person and property for which the law furnishes no redress, instances in which the misfortune of the plaintiff is not attributable to any fault on the part of the defendant, and the injury sustained is, in the Latin phrase, 'damnum absque injuria.' The doctrine of the maxim is not inconsistent with the rule of law that a man may use his own property as he pleases, for all purpose for which it is adaptable, without being answerable for the consequences, if he is not an active agent in causing injury, if he does not create a nuisance, and if he exercises due care and caution to prevent injury to others. If one does a lawful act on his own premises he cannot be held responsible for injurious consequences resulting therefrom unless the act is so done to constitute negligence." (38 Am. Jur., Neg., sec. 4, pp. 644–646.)

*Dahl v. Valley Dredging Co.,* 125 Minn. 90, 145 N. W. 796, 52 L. R. A. (NS) 1173, was an action by a seven-year-old boy to recover damages for injuries he received in being burned. It appeared that the defendant was engaged in constructing a drainage ditch using a dredging machine operated by a gasoline engine in which naphtha was used instead of gasoline. To prime the engine the engineer kept some naphtha in a coffee pot on a shelf in the engine room. In the absence of the engineer the plaintiff and his two brothers went upon the premises, procured the coffee pot containing the naphtha and an older brother set fire to some waste and then poured some naphtha upon the smoldering waste and it blazed up and the plaintiff was injured. In reversing a judgment for the plaintiff, the court said: "The same degree of care cannot be expected in the case of an article unattractive in itself, not inherently dangerous, and which is in such common use that people generally keep it about their premises and are familiar with it, as in the case of an article attractive in itself, or inherently dangerous, or so uncommon that people generally neither have or use it. If defendant was negligent under the facts of this case, every householder who permits a can of gasoline or kerosene to remain where a neighbor's child has access to it, is likewise negligent. To hold that leaving this can of naphtha in its usual place on a shelf behind the engine, while the crew were at dinner, is sufficient to establish negligence, would extend the rule so that the greater number of the householders of the state would be liable to a similar charge. The care taken by people generally to prevent injury from articles in common use is a proper guide for the courts in determining what constitutes due care in respect to such articles. The law does not exact a degree of care in guarding any article which will make the great majority of the possessors of that

article chargeable with habitual or continuous negligence. Due care in any case is the care usually exercised by men of ordinary prudence in like cases and under like circumstances. This is the standard by which the conduct of those charged with negligence is measured."

██ The evidence in this record falls far short of bringing this case within the doctrine of an attractive nuisance which requires an owner of property to respond in damages for the injuries to a child occurring upon its premises where he left unguarded or exposed some dangerous attraction which causes injury. Defendant did not maintain any dangerous thing or condition in its rest room. Neither was the plaintiff in the rest room of defendant as a trespasser, but was there with the defendant's consent. She was an invitee and defendant owed to the plaintiff the duty it owed to all invitees and that was to have its premises in a reasonably safe condition. Due care in any case is the care usually exercised by men of ordinary prudence in like cases and under like circumstances. This is the standard by which the conduct of those charged with negligence is measured. As stated in the text of 20 R. C. L. Neg., sec. 20, p. 27, the care taken by people generally to prevent injury from articles in common use is a proper guide for the courts in determining what constitutes due care in respect to such articles. The law does not exact a degree of care in guarding any article which will make the possessors of that article chargeable with habitual or continual negligence. (See also 38 Am. Jur., Neg., sec. 34, pp. 679–680).

██ The facts in this case establish that the care taken by appellant was that taken by people generally under like or similar circumstances. The reasoning in *Howlett v. Dorchester Trust Co.*, 256 Mass. 544, 152 N. E. 895, *supra*, is not persuasive. The verdict and judgment in this case is not sustained by the evidence

found in this record and therefore that judgment is reversed.

*Judgment reversed.*