LOLA DIAL, Plaintiff-Appellant, *v.* MARIO MIHALIC, Defendant-Appellee.

First District (2nd Division)    No. 81-1530

Opinion filed June 29, 1982.

Henslee, Monek & Henslee, of Chicago (John J. Naughton and Daniel J. Downes, of counsel), for appellant.

Rooks, Pitts, Fullagar & Poust, of Chicago (John G. Poust and Christine M. Wheelock, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Lola Dial, appeals the trial court's order dismissing with prejudice her third amended complaint filed against defendant, Mario Mihalic. The issue presented for review is whether plaintiff's complaint states a cause of action. For the reasons which follow, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

Plaintiff's lawsuit arose out of an accident which occurred on the evening of March 1, 1977. At the time of the accident plaintiff was the tenant of apartment 501 in a building owned by defendant and was visiting another tenant in apartment 504 of the same building. Plaintiff's third amended complaint alleged that plaintiff was standing in the kitchen preparing food in the oven of an electric stove supplied for the apartment

by defendant when the oven door suddenly and unexpectedly fell open from a closed vertical position to an open horizontal position due to a failure of the oven door securing mechanisms to hold the door in a closed position. The opening of the door startled plaintiff, who tripped and fell backwards onto the hot surface of the opened door causing her to suffer severe and permanently disfiguring burns. Plaintiff brought a tort action against defendant, landlord and lessor of the apartment in which plaintiff was injured, alleging that defendant had breached his duties under the terms of a lease which defendant had entered into with the tenant in whose apartment the accident had taken place. In an affidavit attached to her complaint plaintiff averred that she was not able to secure a copy of the lease for apartment 504 and therefore submitted her own lease (for apartment 501) which, except for certain details not relevant here, contained the same provisions. Paragraph 6 of the lease (Exhibit I) states in part:

> "C. Lessor covenants that at all times during the Term hereof, the Lessor shall maintain the Apartment and the Building to the following minimum standards:
>
> * * *
>
> (5) Gas and/or electrical appliances which are supplied by Lessor in good working order, appropriate gas piping and electrical wiring system to the extent existing in the Building maintained in good working order and safe condition."

Plaintiff claimed that by virtue of this covenant, "defendant expressly assumed the duty to maintain the aforesaid stove, which defendant as Lessor had supplied, in good working order and safe condition" and that defendant breached this duty, which breach resulted in serious injuries to plaintiff. Paragraph 10 of the complaint alleged that "prior to said occurrence, defendant had been notified that said stove was not in good working order and was not in safe condition, but notwithstanding said notice, defendant had failed and refused to repair and maintain said stove in violation of said express covenant to do so." Paragraph 11 asserted that defendant was guilty of one or more of the following "careless and negligent acts and/or omissions:"

> "(a) Failed to properly and adequately maintain the appliances provided in the apartment;
>
> (b) Failed to advise plaintiff or post any notice of the defective condition of the stove;
>
> (c) Failed to heed complaints that said stove was not in good working order and was not in safe condition, and failed and refused to repair and maintain said stove in violation of express covenant to do so."

In subparagraph (d) plaintiff advanced a *res ipsa loquitur* theory of recovery. Paragraph 12 claimed that plaintiff's injuries were directly and

proximately caused by defendant's acts and/or omissions. Plaintiff sought more than $15,000 in damages.

Defendant filed a motion to dismiss the third amended complaint alleging that (1) the lease agreement imposed no duty of repair which would give rise to an action for damages arising out of personal injuries; (2) plaintiff lacked standing to pursue an action for breach of an alleged covenant in the lease; (3) the complaint failed to allege compliance with the written notice requirements of the lease;[1] (4) the lease imposed no duty to maintain the stove in a safe condition; and (5) defendant did not owe plaintiff any common law duty of ordinary care with respect to the appliance in question.

On February 25, 1981, a hearing was held on defendant's motion to dismiss the third amended complaint. The trial court asked the parties to brief the issue of the requirement of written notice. After a final hearing, plaintiff's complaint was dismissed with prejudice in an order entered May 29, 1981.

Under paragraph 6C(5) of the lease, defendant covenanted to maintain the electrical appliances in good working order "at all times during the Term" of the lease. Plaintiff's first argument on appeal is that damages for personal injuries are recoverable for breach of this covenant. Plaintiff relies principally upon the decision in *Looger v. Reynolds* (1975), 25 Ill. App. 3d 1042, 324 N.E.2d 238, where the court adopted section 357 of the Restatement (Second) of Torts (1965). Section 357 states:

> "A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

---

[1] Paragraph 23 of the lease, "TENANT'S REMEDIES," provides in part that if Lessor:

"(1) defaults in its duty to maintain the Apartment ° ° ° or in its agreements to perform repairs, ° ° ° as set forth in Paragraph 6 and such default is not cured by Lessor within 30 days after notice from Tenant to Lessor (unless such default involves a hazardous condition or failure to furnish heat, hot water or essential services, which shall be cured forthwith); and provided Lessor's failure to cure is not excused on account of one or more of the defenses set forth in Paragraph 6(C) [the lease apparently means to refer to Paragraph 6(D), which is not applicable here] ° ° ° Tenant may: treat such event as a breach of this Lease and, in addition to all other rights and remedies provided at law or in equity ° ° ° may, by giving Lessor not less than 10 days prior written notice, terminate the Lease and the Term created hereby by setting forth the date of said termination in the said 10 days' notice and vacating on or before said date, with rent paid to said termination date. Prepaid rent and Security Deposit, if any, shall be promptly refunded to Tenant."

Paragraph 19, entitled "NOTICES," provides that "Notices ° ° ° shall be in writing ° ° °."

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract." Restatement (Second) of Torts sec. 357 (1965).

As set forth in *Looger*, three rationales have been advanced in support of acceptance for the Restatement rule:

"(1) The landlord, by the agreement to repair, reserved a privilege to entry and supervision of the premises by virtue of which he retained 'control' of the premises and ought to be liable as an occupier of the land; (2) the lessor by his promises, induced the tenant to forego repairs of his own, and so by his misleading undertaking has made himself responsible for the consequences; and (3) the landlord stands in a special relation to the tenant and, by entering into the covenant to repair, undertakes an additional responsibility which extends the relationship." (*Looger v. Reynolds* (1975), 25 Ill. App. 3d 1042-43, 324 N.E.2d 238, 239. See also *Dean v. Hershowitz* (1935), 119 Conn. 398, 177 A. 262; Prosser, Law of Torts sec. 63 (4th ed. 1971).

Defendant questions the precedential value of *Looger* on a number of grounds none of which has merit. Defendant first states that "despite the fact that [*Looger*] purported to adopt what was a radical change in Illinois law, defendant has not been able to find any other decisions in which another Illinois court actually applied Section 357 of the Restatement." We note, however, that subsequent to *Looger*, two other decisions apparently have accepted section 357 as a valid statement of Illinois law. (See *Hurt v. Pershing Mobile Home Sales, Inc.* (1980), 83 Ill. App. 3d 724, 726, 404 N.E.2d 842; *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 647, 356 N.E.2d 575.) Although neither opinion found section 357 applicable to the facts of the particular case, both acknowledged that a cause of action for personal injuries may be based on section 357.

Moreover, we cannot agree with defendant that *Looger* effected "a radical change in Illinois law." In adopting section 357 of the Restatement (Second) of Torts (1965), the *Looger* court relied in part on *Moldenhauer v. Krynski* (1965), 62 Ill. App. 2d 382, 210 N.E.2d 809, where a tenant was allowed to recover damages in tort for personal injuries proximately caused by the landlord's failure to perform a promise to repair and *Lulay v. South Side Trust & Savings Bank* (1972), 4 Ill. App. 3d 483, 280 N.E.2d 803, where a tenant's daughter was permitted to recover damages in tort occasioned by the landlord's failure to abide by a covenant to repair given in his lease. In *Lulay* the court stated, "A growing number of courts adhere to the rule that a landlord who has covenanted to keep premises in repair is liable for injuries received by the tenant, his family, servants,

invitees or sub-tenants, because of his failure to do so. [Citations.]" *Lulay v. South Side Trust & Savings Bank* (1972), 4 Ill. App. 3d 483, 485, 280 N.E.2d 803.

Defendant next argues that *Looger* is distinguishable on its facts because the complaint in *Looger* indicated that the landlord "specifically undertook" with his tenant an obligation to repair the defective porchway on which the plaintiff, the tenant's guest, was ultimately injured. Thus, the alleged defect appeared to have been present at the time the lease was entered into. While defendant's observation regarding the facts in *Looger* may be correct, section 357 provides that liability may exist for "a condition of disrepair existing before *or arising after the lessee has taken possession* * * *." (Emphasis added.)

Defendant also purports to distinguish *Looger* on the ground that in *Looger* there was an undertaking by the lessor to make a specific repair, as opposed to a general covenant to repair. Section 357, however, does not limit liability to agreements to make specific repairs but extends to "a covenant in the lease or otherwise to keep the land in repair, * * *." In *Moldenhauer v. Krynski* (1965), 62 Ill. App. 2d 382, 388, 210 N.E.2d 809, a case decided before section 357 of the Restatement was adopted, the court rejected "a distinction between contracts involving a continuing duty to repair and those involving a duty to make specific or single repairs."

> "There appears to be no substantial reason for making the distinction made by the defendants. The gravamen of an action to recover damages for personal injuries resulting from a breach of a covenant to repair is the breach of a covenant itself; if the landlord is to be held liable it is only because he negligently failed to perform his duty. [Citation.] Whether the contract calls for the landlord to keep the premises in repair or simply to put the premises into repair has no bearing on whether he has negligently failed to make such repairs." *Moldenhauer v. Krynski* (1965), 62 Ill. App. 2d 382, 390, 310 N.E.2d 809.

■■ Contrary to defendant's argument, a landlord may be liable for injuries proximately caused by breach of a general covenant to repair. See *Farmer v. Alton Building & Loan Association* (1938), 294 Ill. App. 206, 13 N.E.2d 652.

■■ Finally, defendant suggests that the defective porchway in *Looger* may have been a common area used by other tenants and he notes that a landlord's duty to maintain common premises for the use of tenants and their guests traditionally has been recognized. (See, *e.g., Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 350, 247 N.E.2d 877.) Again, the applicability of section 357 is not limited to common areas. While it is not clear from the *Looger* opinion whether the porchway was a common

area, the briefs filed in that case indicate that it was not. In any event, it seems improbable that the court would have adopted section 357 of the Restatement if the landlord's liability for personal injuries could have been predicated on a well-established tort theory. We also point out that the cases decided after *Looger* which have recognized the adoption of section 357 in Illinois have not relied upon the distinction between demised premises and common areas in determining whether a cause of action had been stated under section 357. (See *Hurt v. Pershing Mobile Home Sales, Inc.* (1980), 83 Ill. App. 3d 724, 404 N.E.2d 842; *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E.2d 575.) In our judgment *Looger* is not distinguishable on any of the grounds raised by defendant. Based on the foregoing, we conclude that a cause of action for personal injuries may be based on section 357 of the Restatement (Second) of Torts (1965).

Defendant next contends that plaintiff lacks standing to sue for an alleged breach of the covenant to repair because she was not a party to the lease. We must reject this contention. Under section 357 of the Restatement, a lessor of land is subject to liability for "physical harm caused to his lessee and others upon the land with the consent of the lessee" where the lessor has negligently breached a contractual agreement to keep the land in repair and where the breach creates an unreasonable risk to persons upon the land which performance of the lessor's agreement would have prevented. The lessor's duty under the rule "is not merely contractual, although it is founded upon a contract. It is a tort duty. It extends to persons on the land with the consent of the lessee, with whom the lessor has made no contract." (Restatement (Second) of Torts sec. 357, comment d (1965); see also *Lulay v. South Side Trust & Savings Bank* (1972), 4 Ill. App. 3d 483, 485, 280 N.E.2d 803.) Paragraph 21 of the lease provides, in part:

> "Tenant further agrees that *except for instances of negligence* or willful misconduct of Lessor, its agents or employees, Lessor, its agents or employees shall not be liable for any damage to the person or property of Tenant *or any other person occupying or visiting the Apartment* or Building, sustained due to the Apartment or Building or any part thereof or any appurtenance thereof becoming out of repair * * *." (Emphasis added.)

■■ This provision implies that the lessor may be liable for personal injuries sustained by a guest of a tenant where those injuries are proximately caused by the lessor's negligent failure to keep the demised premises in repair. We conclude that plaintiff has standing to bring this action.

Defendant further contends that even if section 357 is "potentially applicable," plaintiff's third amended complaint fails to allege facts showing a failure on defendant's part to use due care. Section 357(c)

requires, as an element of liability, that "the lessor fails to exercise reasonable care to perform his contract." Comment d to the section states:

> "Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless it provides that the lessor shall inspect the land to ascertain the needs of repairs, a contract to keep the premises in safe condition subjects the lessor to liability only if he does not exercise reasonable care after he had had notice of the need of repairs. In any case his obligation is only one of reasonable care."

■■ The parties dispute whether, in the absence of actual notice, defendant was under an affirmative duty to inspect the demised premises to ascertain the needs of repairs. Assuming, however, that there was no duty to inspect, plaintiff's complaint specifically alleged that defendant was given notice that the "stove was not in good working order and was not in safe condition" but "failed and refused to repair and maintain said stove * * *." Defendant maintains that since the complaint did not set forth facts indicating that defendant had a reasonable opportunity to repair the alleged defect, there were no facts suggesting a failure to use due care. While the complaint did not recite, in so many words, that defendant had had a reasonable opportunity to repair the alleged defect, that inference reasonably may be drawn from the language of the complaint and thus would withstand defendant's motion to dismiss.

Defendant's principal argument regarding section 357 is that even if it is found applicable, plaintiff's complaint was properly dismissed because it failed to allege that defendant was given *written* notice of the asserted need of repairs. Subparagraph (c) of section 357 of the Restatement posits as one element of liability that "the lessor fails to exercise reasonable care to perform his contract." Comment (d) to this section, quoted above, notes that since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Defendant submits that a cause of action has not been stated because the lease, by its express terms, requires written notice of alleged defects.

Plaintiff responds that no notice was necessary because under the lease defendant had a continuing duty to keep the demised premises in a constant state of repair. Plaintiff also relies on paragraph 11 of the lease which states, in part, that "Lessor reserves the right in accordance herewith to enter the Apartment in order to inspect same, make necessary or agreed repairs, * * * [or] supply necessary or agreed services * * *." Plaintiff argues that where the lessor has covenanted to keep the demised premises in a state of repair, an intention that the lessor shall take notice of the need of repairs from his own observation may be implied from the lessor's reservation in the lease of a right to enter and inspect the premises. (See *Hurt v. Pershing Mobile Home Sales, Inc.* (1980), 83 Ill. App. 3d 724,

727-728, 404 N.E.2d 842; *Alaimo v. Du Pont* (1954), 4 Ill. App. 2d 85, 92, 123 N.E.2d 583; *Cromwell v. Allen* (1909), 151 Ill. App. 404, 408.) In the alternative, plaintiff argues that the written notice provision is unenforceable as a matter of public policy (Ill. Rev. Stat. 1975, ch. 80, par. 91) and is inapplicable to anyone other than the party who signed the lease. See *Valentin v. Swanson & Co.* (1960), 25 Ill. App. 2d 285, 289, 167 N.E.2d 14.

■■ In our view it is unnecessary to decide whether plaintiff had a continuing duty to keep the demised premises in a constant state of repair irrespective of any notice from the tenant. A lessor's liability under section 357 of the Restatement may be based on the lessor's failure to exercise reasonable care after he has had notice of the need of repairs. (Restatement (Second) of Torts sec. 357, comment d (1965).) Here plaintiff's third amended complaint alleged that defendant was given notice of the defective stove oven door and "failed and refused to repair and maintain said stove * * *." While the complaint did not allege that the notice was in writing, the Restatement does not predicate liability upon written notice nor, in our opinion, do the lease provisions involved in this case require such notice.

Paragraph 23 of the lease states in part that if the lessor defaults in his duty to maintain the apartment or in his agreements to perform repairs as set forth in paragraph 6 and such default is not cured by the lessor within 30 days after notice from the tenant (unless such default involves a hazardous condition or failure to furnish heat, hot water or essential services, which shall be cured forthwith), the tenant may treat such event as a breach of the lease and, in addition to all other rights and remedies provided at law or in equity, may, by giving lessor not less than 10 days' prior written notice, terminate the lease. Contrary to defendant's argument, paragraph 23 does not define the lessor's duty of repair (which duty is contained in paragraph 6 of the lease and furnishes the basis of liability under section 357 of the Restatement) but merely determines the circumstances under which the tenant may terminate his lease after the landlord has defaulted in his obligation under paragraph 6 to maintain the apartment or perform repairs. Termination of the lease upon not less than 10 days' prior written notice is an option the tenant has "in addition to all other rights and remedies provided at law or in equity" which are "distinct, separate, and cumulative." Paragraph 22.

■■ Defendant seemingly argues that there can be no actionable breach of the landlord's covenant to repair unless the tenant first complies with the notice provisions of paragraph 23. Even if we accept this argument, we note that while paragraph 23 specifies that the notice of *termination* must be in writing, subparagraph 23(1) does not impose such a requirement on the notice of *default* where the default relates to the lessor's duty to "maintain the Apartment * * * or in its agreements to perform repairs,

\* \* \* as set forth in Paragraph 6 \* \* \*." In contrast, subparagraph 23(2) explicitly requires "written notice" of default "in the performance of any other covenant or agreement" of the lease as a condition precedent to termination. Although paragraph 19 of the lease, denominated "NOTICES," states that "Notices, \* \* \* shall be in writing," we do not believe that this general requirement of written notice was intended to apply to subparagraph 23(1) which, unlike subparagraph 23(2), makes no mention of written notice of default. Indeed, it is strained to suggest that no liability attaches to the landlord's failure to cure a default regardless of its seriousness merely because the landlord was not given written notice of it. We conclude that the notice alleged in plaintiff's third amended complaint was sufficient and hold that plaintiff's complaint states a cause of action under section 357 of the Restatement (Second) of Torts (1965).

In her reply brief plaintiff also argues that the facts set forth in her third amended complaint would support a *res ipsa loquitur* theory of recovery. This argument was not raised in her original brief and will not be considered here. Ill. Rev. Stat. 1981, ch. 110A, par. 341(e)(7); *Herman v. Hambler* (1980), 81 Ill. App. 3d 1050, 1054, 401 N.E.2d 973.

For the foregoing reasons the order of the circuit court of Cook County is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded for further proceedings.

DOWNING and HARTMAN, JJ., concur.