MARVIN TROTTER, a Minor by his Grandmother and Duly Appointed Guardian, Dolly Trotter, Plaintiff-Appellant, v. CHICAGO HOUSING AUTHORITY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 86—2495

Opinion filed November 9, 1987.

BUCKLEY, J., dissenting.

Benjamin H. Cohen, of Schwartzberg, Barnett & Cohen, and Todd A. Heller, of Heller & Morris & Associates, Ltd., both of Chicago, for appellant.

Gary K. Moore and Thomas J. Branit, both of Moore & Maisel, of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Marvin Trotter, a minor, by Dolly Trotter, his grandmother and duly appointed guardian, sued defendants Chicago Housing Authority (CHA) and its janitor Bulford Givens (Givens) for personal injuries sustained, where, at age 11 months, he fell off a bed in his mother's apartment and was burned by a steam pipe adjacent to his bed. The trial court, relying on *Hubbard v. Chicago Housing Authority* (1985), 138 Ill. App. 3d 1013, 487 N.E.2d 20, entered summary judgment for defendants. Plaintiff appeals contending that the

rule stated in *Hubbard* is no longer valid.

The record shows the following.

Plaintiff's mother Shirley Anne Trotter rented an apartment from CHA's Henry Horner Homes and moved in on October 31, 1975, with her son Matthew. When she moved in she did not notice anything wrong with the apartment.

In 1976, plaintiff's grandmother, who lived in an apartment in another building in the Henry Horner Homes, complained to the CHA at its maintenance office about the bare pipe. That was the only time she complained. Plaintiff's mother never did.

On January 15, 1977, plaintiff Marvin was born. About 9 p.m. on December 9, 1977, plaintiff, age 11 months, was badly burned when he fell from his bed on to a bare steam pipe that ran horizontally into a radiator which, together with the pipe, was part of the heating system of the building. The pipe had been there from the time she moved in. Plaintiff was at the age where he was on his way to begin to walk; he was holding on, standing up and then falling down. Plaintiff's bed was a single bed without any guardrails. Plaintiff had never fallen on the pipe before.

Plaintiff alleged defendants were negligent in that they:

(a) failed to exercise reasonable care in the operation and control of its premises;

(b) failed to inspect the bedroom, which would have revealed a hazardous condition;

(c) permitted uninsulated pipes to be used in heating the apartment;

(d) failed to warn plaintiff of dangerous conditions;

(e) failed to repair defective condition of pipes by enclosing or insulating them;

(f) failed to inaugurate and maintain necessary and proper safety standards in the operation of the premises.

As stated, the trial court entered summary judgment for defendants on the authority of the *Hubbard* case.

In that case, *Hubbard v. Chicago Housing Authority* (1985), 138 Ill. App. 3d 1013, 487 N.E.2d 20, *appeal denied* (1986), 111 Ill. 2d 581, a tenant was injured when he came in contact with a hot steam pipe located in his apartment which was owned by CHA (the same defendant as in the case at bar). There, as here, plaintiff alleged negligence on the part of the CHA in placing steam pipes along the surface of the apartment walls where tenants would come in contact with the pipes, which were not covered by any type of insulating material. Defendant was alleged to be negligent in leaving hot steam pipes ex-

posed (one of the charges of negligence in the case at bar).

This court held that there was no liability on the part of CHA, stating:

> "It is well settled that a landlord is not liable for injuries sustained by a tenant on premises leased to the tenant. (*Thorson v. Aronson* (1970), 122 Ill. App. 2d 156, 258 N.E.2d 33.) 'In multiple-unit dwellings, a landlord owes his tenants a duty of reasonable care in the management and maintenance of areas open for use by all tenants.' *Webster v. Heim* (1980), 80 Ill. App. 3d 315, 316, 399 N.E.2d 690, 619." 138 Ill. App. 3d at 1015.

■ The steam pipes in the instant case are similar to the steam radiator involved in *Dargie v. East End Bolders Club* (1952), 346 Ill. App. 480, 105 N.E.2d 537. There; the plaintiff was a three-year-old child who was burned by an exposed radiator in a restroom in defendant's club. Plaintiff alleged that defendant was negligent in failing to cover the radiator with a guard. This court held that leaving a steam radiator exposed did not constitute negligence since the radiator was being used for the purpose for which it was intended and there was no defect in the radiator. (346 Ill. App. at 490, 105 N.E.2d at 542.) Similarly, in the instant case, we do not believe plaintiff has stated an action for common law negligence. Plaintiffs do not point to any defects in the steam pipes. The steam pipes were simply hot and exposed, but not defective. Plaintiff was free to install safety guards around the steam pipes, but the lack of guards does not form the basis of liability on the part of defendant.

Plaintiff argues that these precedents should not be followed; that the feudal concepts of landlord and tenant should no longer apply. (See *Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 424 N.E.2d 941, *appeal denied* (1981), 85 Ill. 2d 578.) Cited in support of this contention are *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208 (which expanded the rights of tenants), *Aranzullo v. Harrison* (1946), 64 N.Y.S.2d 354 (14-year-old child—uncovered steam pipe), *Thompson v. Paseo Manor South, Inc.* (Mo. App. 1959) 331 S.W.2d 1 (22-month-old child—steam pipe), and *Coleman v. Steinberg* (1969), 58 N.J. 58, 253 A.2d 167 (one-year-old infant—hot water pipe).

However, in *Yuppa v. Whittaker* (1958), 88 R.I. 214, 145 A.2d 255, the court held that the landlord of a tenement in which a child was injured from an uncovered heated pipe was not liable, stating that where the tenant rented with knowledge that the uncovered pipe passing through the premises would be heated on occasion, the tenant took the premises as she found it and the landlord did not have a duty

to guard against such defect either as to the tenant or any invitee, including members of her household.

Plaintiff also cites in support of changing the standard: the concepts of landlord and tenant law as stated in Judge George Moran's dissent in *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 653 *et seq.*, 356 N.E.2d 575, *appeal denied* (1977), 65 Ill. 2d 577, and the cases of *Sargent v. Ross* (1973), 113 N.H. 388, 308 A.2d 528 (four-year-old—fall from stairway), *Gladden v. Walker & Dunlop, Inc.* (D.C. 1948), 168 F.2d 321 (adult—defective electric switch), and *Javins v. First National Realty Corp.* (D.C. 1970), 428 F.2d 1071.

Plaintiff further argues that the court should apply the rule of *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, which, as to trespassing minors, substituted in place of the "attractive nuisance" doctrine the general rules of negligence, principally foreseeability of harm to a minor, and a consideration that the expense or inconvenience of remedying the condition is slight compared to the risk to children. We disagree.

But even if the principles adopted in *Kahn* applied to the landlord-tenant relationship, CHA was not liable in the case at bar.

■ It is well settled that a landlord is not an absolute insurer (*Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349, 420 N.E.2d 243, *appeal denied* (1981), 85 Ill. 2d 563); neither is a landowner as to child trespassers (*Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 78, 217 N.E.2d 483).

Even where a landlord retains control of part of the premises, he is not liable for injuries that are not reasonably foreseeable; he is not an absolute insurer for all injuries occurring on his premises. *Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 488 N.E.2d 644 (one-year-old injured when hand went through glass panel of door).

■ Where there is no duty to repair, common law liability can only arise from a negligent performance of a voluntary undertaking. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Defendants did not voluntarily undertake any repairs here.

■ Further, the existence of a legal duty on the part of a landowner is not dependent on the factor of foreseeability alone, but includes consideration of public policy and local requirements. *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 195, 478 N.E.2d 603.

Under the facts of this case, the CHA could not reasonably foresee that an 11-month-old infant, who was beginning to be active, would be left unattended on a bed without sides.

The responsibility for a child's safety lies primarily with the parents. See *Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 219

N.E.2d 483, where the court said.

> "It is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon. The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself. Others can be held responsible for injuries only if they are at fault under some recognized theory of liability." 35 Ill. 2d at 79.

See also *Kay v. Ludwick* (1967), 87 Ill. App. 2d 114, 119, 230 N.E.2d 494.

■ Further, there is nothing in the record to indicate what will be the relative expense or inconvenience in remedying the claimed dangerous condition of the uninsulated pipe as related to the risk to children. This court can take judicial notice of the fact that the Henry Horner Homes is a large housing project and is only one of such projects in the city of Chicago. Each contains many apartments.

The narrow facts in this case are not a sufficient vehicle for the sweeping change in the settled Illinois law sought by plaintiff.

The summary judgment for the defendants is affirmed.

Affirmed.

CAMPBELL, J., concurs.

JUSTICE BUCKLEY, dissenting:

I must respectfully dissent from the majority opinion in this case on the grounds that the record does not establish as a matter of undisputed fact that the defendant Chicago Housing Authority (hereinafter CHA) had no duty to see that the pipe in question was insulated at the time of the occurrence, or that it did not retain control of the steam pipes in question even though they were located in the apartment leased to the minor plaintiff's mother.

The record in this case, in addition to the facts set forth in the majority opinion, shows the following: The minor plaintiff's mother had resided in apartment 502 in CHA's Henry Horner Homes project from October 1975 until the time of the occurrence in December 1977. At the time she moved in, her family consisted of her older son, Matthew, then about a year old. The minor plaintiff was about 10 months old at the time of the occurrence described in the majority opinion.

In the bedroom occupied by the minor plaintiff were two steam pipes, one horizontal and the other vertical. The horizontal pipe, on

which the minor plaintiff was injured, was about two feet long. At the time of the occurrence, the horizontal two-foot pipe was bare, and had been so since plaintiff's mother moved into the apartment. Afterwards, the pipe was wrapped or covered with asbestos or some other insulating material.

There was also a bare pipe in the living room, but the steam pipe in the kitchen was wrapped. The normal condition of the pipes in apartment 502 was that they were wrapped. Dolly Trotter, the minor plaintiff's grandmother, also lived in the Henry Horner Homes, and the steam pipes in her apartment were wrapped. The grandmother had complained to a CHA office known as the "Maintenance Office" about the lack of wrapping on some of the pipes in her daughter's apartment. CHA, at various times, made repairs in apartment 502. After the minor plaintiff was burned, CHA covered the horizontal pipe with insulating material. Apparently, other children had been burned on hot steam pipes in the CHA project.

This matter reaches this court on an appeal from an order granting CHA's motion for summary judgment. The rule applicable to the review of the record by the trial court in passing on such motions is well settled. Summary judgment is proper when, on the basis of the entire record, there is no genuine issue of material fact and the right of the moving party to summary judgment is clear as a matter of law. Inferences may be drawn from undisputed facts, and the court must construe the record most strongly against the moving party. *Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 403, 472 N.E.2d 822, 824; *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 525, 455 N.E.2d 143, 146; *Tunk v. Village of Willow Springs* (1983), 120 Ill. App. 3d 800, 804, 458 N.E.2d 1132, 1135.

Applying these rules to the record in the instant case, the operative facts are as follows: The apartments in the Henry Horner Homes were equipped with steam heating. The steam was transmitted into the individual apartments from an external source by a series of pipes which were open and exposed to the interior of the apartment, being installed adjacent to the interior walls. Normally, the steam pipes in the interior of the apartments were covered with insulating material. In the case of apartment 502, some of the pipes, including a two-foot section of horizontal pipe in the room occupied by the minor plaintiff as a bedroom, were not insulated, while others were insulated. The CHA had been made aware of the existence of the uninsulated section of pipe in apartment 502 prior to the occurrence. The CHA provided maintenance, to some extent, for the interior of the apartment, from the fact that subsequent to the occurrence it insulated the two-foot

section of pipe involved, and that maintenance included the insulation of the steam pipes. (Although this latter fact is not admissible on the issue of negligence, it is admissible to show control which, as will hereinafter be shown, is pivotal.) See *Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 575, 424 N.E.2d 941, 945-46.

In holding, on the basis of these facts, that the right of the CHA to judgment as a matter of law was free from doubt, the majority relies, primarily, on *Hubbard v. Chicago Housing Authority* (1985), 138 Ill. App. 3d 1013, 487 N.E.2d 20, a superficially identical case. *Hubbard* came to this court on an appeal from an order granting a motion to dismiss the complaint. Thus, the record in that case was devoid of the factual detail mentioned in this dissenting opinion. In addition to the claim based on the common law negligence doctrine, it also involved a claimed breach of a municipal ordinance and a "covenant to repair" as well as a products liability count.

Insofar as common law negligence was concerned, the *Hubbard* opinion notes that the complaint asserted negligence in placing the pipes along the surface of the apartment walls and in failing to cover them with insulating material. (138 Ill. App. 3d at 1015, 487 N.E.2d at 21.) The *Hubbard* opinion then specifically notes that the complaint did not point to any defect in the steam pipes, and in the following paragraph, holds that landlords owe a duty of reasonable care as to the common areas open for use by all tenants, but not for the part of the premises occupied by an individual tenant.

*Hubbard*, in turn, relied upon *Dargie v. East End Bolders Club* (1952), 346 Ill. App. 480, 105 N.E.2d 537. There the defendant was held not to be liable for failing to cover a steam radiator which was being used for the purpose intended and which was not defective. Factually, there is a difference between a steam radiator which is designed to radiate heat and pipes which are intended to convey the heat to the radiator. Moreover, as noted, there is also a distinction, in terms of defective condition, between uninsulated pipes and pipes from which the insulation has been partially omitted or removed.

*Hubbard*, therefore, held that a landlord could not be held liable for installing a steam heating system which contained only exposed pipes which were not insulated. It recognized that a different case would be presented if the system, as installed, was defective. There are facts in the record from which it can be inferred that the steam pipes in the Henry Horner Homes apartments were to be insulated; that some of the pipes in apartment 502 were insulated at the time of the occurrence, but that the two-foot section causing the injury to the minor plaintiff had either been left uninsulated or had become uninsu-

lated prior to the time of the occurrence.

The Illinois Supreme Court has recognized the distinction between nonfeasance and misfeasance, holding that where one voluntarily undertakes a duty reasonable care must be exercised in its discharge. (*Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317, 412 N.E.2d 472, 474, relying on *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 85-86, 199 N.E.2d 769, 774.) The record in this case indicates that the CHA may have undertaken to provide insulated steam pipes in its apartments; if so, a reasonable man could conclude that the failure to do so in the case of the two-foot segment of horizontal pipe in a bedroom was negligence. While I concurred in *Hubbard* because of an unwillingness to declare a duty to provide insulated or enclosed pipes, I would hold that, the CHA having undertaken to provide them, the failure to do so, as to some of the pipes, raises a question of fact as to the breach of a duty voluntarily undertaken.

The alternate basis of decision in *Hubbard*, the fact that the pipes involved were located in the apartment occupied by the tenant, is not determinative in this case since the facts in the record indicate that the defendant CHA elected to provide insulated steam pipes, retained, as indicated by its maintenance operations and its subsequent insulation of the length of pipe involved, control of the pipes which were part of the building-wide heating system.

A relatively recent trend would impose on landlords a general duty of exercising ordinary care to provide safe conditions in demised premises without regard to possession and control. The supreme court of New Hampshire, in *Sargent v. Ross* (1973), 113 N.H. 388, 396-97, 308 A.2d 528, 533, has so held, basing its conclusion on its earlier decision that leases contained a warranty of habitability. Other reviewing courts have followed New Hampshire's lead. See, *e.g.*, *Pagelsdorf v. Safeco Insurance Co.* (1979), 91 Wis. 2d 734, 744, 284 N.W.2d 55, 59; *Young v. Garwacki* (1980), 380 Mass. 162, 168, 402 N.E.2d 1045, 1049; *Corrigan v. Janney* (Mont. 1981), 626 P.2d 838, 840; *Mansur v. Eubanks* (Fla. 1981), 401 So. 2d 1328, 1329-30 (courts of last resort); *Presson v. Mountain State Properties, Inc.* (1972), 18 Ariz. App. 176, 177-78, 501 P.2d 17, 19-20; *Stoiber v. Honeychuck* (1980), 101 Cal. App. 3d 903, 914, 162 Cal. Rptr. 194, 198; *Golden v. Conway* (1976), 55 Cal. App. 3d 948, 955, 128 Cal. Rptr. 69, 73 (intermediate reviewing courts).

The rationale for such a rule is expressed succinctly in *Javins v. First National Realty Corp.* (D.C. 1970), 428 F.2d 1071, 1074, as follows:

"The assumption of landlord-tenant law, derived from feudal

property law, that a lease primarily conveyed to the tenant an interest in land may have been reasonable in a rural, agrarian society; it may continue to be reasonable in some leases involving farming or commercial land. In these cases, the value of the lease to the tenant is the land itself. But in the case of the modern apartment dweller, the value of the lease is that it gives him a place to live. The city dweller who seeks to lease an apartment on the third floor of a tenement has little interest in land 30 or 40 feet below, or even in the bare right to possession within the four walls of his apartment. When American city dwellers, both rich and poor, seek 'shelter' today, they seek a well known package of goods and services—a package which includes not merely walls and ceilings, but also heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance." 428 F.2d at 1074.

This rationale, and the rule it would support in this case, recognizes the modern realities, rather than the logical and historical consequences, of the law of estates in land. Clearly, it is more in line with the present day economic and functional realities of the landlord and tenant relationship in modern, multiunit dwellings. As Oliver Wendell Holmes stated, "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." (Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897).) This court is bound by the decisions of the supreme court of Illinois which have not been overruled or modified, no matter how ancient, and it is for that court, rather than this court, or the legislature, to make such a change in the law. (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 551, 457 N.E.2d 1, 2-3.) Usurpation of the supreme court's prerogative, however, is not necessary to implement the rationale of the more modern rule in this case.

The supreme court's decisions indicate that the touchstone of a landlord's liability is control. (*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877.) *Drewick* was an action by a third party who was struck by a steel ventilator window sash which fell from a building, striking her on the head and shoulders. Alternative liability was asserted against the lessor and the lessee of the building. The defendant owner had leased the building, subleasing a portion of the building and contractually agreeing to repair any damage to the building caused by its negligent acts. It also may have sub-

leased a portion of the premises back. After reviewing the conflicting evidence concerning control of the window area, the supreme court commented:

> "It has long been the law of this State that [the] lessor (or landlord) is liable for injuries which are sustained on premises, or portions thereof, retained in the lessor's control. [Citations.]" 42 Ill. 2d at 350, 247 N.E.2d at 880.

Although it is frequently stated that to be responsible the landlord must retain possession and control of the area for the common benefit of the tenants, such scope is not necessary, and later decisions of the supreme court, by which this court is bound, indicate that the consideration is control of the portion of the premises or facility involved.

In *Wagner v. Kepler* (1951), 411 Ill. 368, 371-72, 104 N.E.2d 231, 233, the court holds that where an owner leases property with actual or constructive notice of a dangerous or defective condition which remains uncorrected, the owner, notwithstanding the lease, is liable to strangers for the injury caused by the defects to the same extent as if he were in actual possession of the property. (Significantly, the rationale of *Wagner* is in direct conflict with that of *Yuppa v. Whittaker* (1958), 88 R.I. 214, 145 A.2d 255, relied upon by the majority.) Significantly, the plaintiff in *Wagner* was the child of a tenant of another apartment in the premises.

In *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 366, 280 N.E.2d 208, 216, the supreme court declared that written or oral leases contained an implied warranty of habitability. In the *Jack Spring* opinion, the court quoted and relied upon the reasoning from *Javins*, previously quoted in this dissent. Subsequently, as noted by Justice Ryan, speaking for the court in *Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 9-10, 479 N.E.2d 915, 918, the court has extended the warranty of habitability to single-family dwellings, contracts for the sale of homes by builder-vendors, and to subsequent purchasers. It had been thought, predicated on the language of *Jack Spring*, that the implied warranty of habitability was limited to question of compliance with municipal building codes. *Glasoe* rejected that contention, holding that any defect of such a substantial nature as to render the premises unsafe or unsanitary, and thus unfit for occupancy, was a breach of the implied warranty of habitability. (*Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 13, 479 N.E.2d 915, 920.) It cannot be said, as a matter of law, that a partially uninsulated, hot steam pipe in a building where the pipes are generally insulated does not constitute such a defect.

Some appellate courts have held that a breach of the implied war-

ranty of habitability would not support an action for personal injuries. (*Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 61, 435 N.E.2d 780, 783; *Beese v. National Bank* (1980), 82 Ill. App. 3d 932, 403 N.E.2d 595; *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E.2d 575.) The persuasiveness of these holdings is diminished, if not destroyed, by the supreme court's express statement in *Glasoe* that they are predicated upon a misinterpretation of *Jack Spring*. It is a significant part of their rationale that, as they state (see, *e.g., Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 64, 435 N.E.2d 780, 783), an action for personal injuries cannot be predicated upon breach of the warranty of habitability. This rationale is in direct conflict with the holding of the supreme court commencing with *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 130, 94 N.E.2d 847, 851, that an action can be maintained for personal injuries predicated upon a negligent breach of warranty.

In *Dial v. Mihalic* (1982), 107 Ill. App. 3d 855, 438 N.E.2d 546, the second division of this court recognized the applicability of section 357 of the Restatement (Second) of Torts (1965), to a case involving a defective oven in an electric stove where there was an express covenant in the lease to maintain it in working order and safe condition. Section 357 provides:

> "A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> (c) the lessor fails to exercise reasonable care to perform his contract." Restatement (Second) of Torts §357 (1965).

Of the three conditions provided in section 357 of the Restatement, the conditions provided in subparagraphs (b) and (c) are clearly issues of disputed fact under the record in this case, and as the lessor CHA has, as a matter of law, impliedly warranted the safety of the steam pipes through its insulation and maintenance of them, it cannot be said as a matter of uncontroverted fact that no liability exists. This conclusion is consistent with the view taken of the "control" issue by the supreme court, as reflected in *Wagner*, its "warranty of habitability" decisions and its assumed duty decisions, with which section 357 of the Restatement is consistent.

410

The majority also asserts that the CHA should not be held liable because it could not foresee the exact manner in which the infant's injury occurred. The law of Illinois is clear that it is not necessary to foresee the exact manner of harm to impose liability. (*St. Clair v. Douvas* (1959), 21 Ill. App. 2d 444, 454, 158 N.E.2d 642, 647-48.) Reasonable minds could clearly differ as to whether the CHA could foresee that an occupant of an apartment would fall against an uncovered portion of a steam pipe. Summary judgment was therefore not appropriate on this basis.

Accordingly, I would hold that where a landlord retains effective control of the instrumentality which proximately causes the injury by impliedly agreeing to maintain, even though it is physically located within the confines of the premises demised to the tenant, the landlord is liable for a failure to use ordinary care in the maintenance of the instrumentality. Since the record contains, as previously noted, facts which make it impossible to say as a matter of law that the CHA did not retain such control of the steam pipe, I would, under the authorities relating to the requirements for the granting of summary judgment previously cited, hold that the judgment of the court below should be reversed and the cause remanded for trial on the merits in accordance with the views as to the applicable law herein expressed.