AMALGAMATED TRUST & SAVINGS BANK, Plaintiff-Interpleader, *v.* EDWARD J. SILHA, JR., Indiv. and d/b/a Professional Consultants Unlimited, *et al.*, Defendants (Louis Lapeyre, Defendant-Appellee; Edward Pinzak, Defendant-Appellant).

First District (2nd Division)   No. 83—901

Opinion filed February 7, 1984.

Cunningham and Wood, of Aurora (Phillip S. Wood and James L. Salsbury, of counsel), for appellant.

Greenberger, Krauss & Jacobs, of Chicago (Stephen A. Cohen and Timothy R. Conway, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Defendant Edward Pinzak (Pinzak) appeals from an order of the trial court granting summary judgment to defendant Louis Lapeyre (Lapeyre) in an action for interpleader filed by plaintiff Amalgamated Trust & Savings Bank (Bank).

On April 3, 1981, the Bank filed a complaint for interpleader, alleging that on November 6, 1979, the Bank opened account No. 105621—2, and a cashier's check in the sum of $52,500 was deposited therein. The account was titled "Edward J. Pinzak, Trustee and Amalgamated Trust & Savings Bank, Escrow agent." The cashier's check had been drawn on a Texas bank, payable to "Edward J. Pinzak and Howard Isador [an Amalgamated Bank official], Trustee & Amalgamated Trust & Savings Bank of Chicago as Escrow agent." The check listed as "purchasers" the "Arroyo Grande Development Corp. (Lapeyre, McCarthy & Simpson)."

The complaint further stated that the Bank had never received any escrow agreement or instructions. The Bank alleged it had been advised by each of the four defendants that he was entitled to the funds in the account. The Bank itself made no claim to the money and requested the court to direct the Bank how to disburse the funds.

On June 1, 1981, defendant Lapeyre filed an answer to the Bank's complaint and a counterclaim against the other defendants wherein he contended that he alone was entitled to the money. Lapeyre alleged that in 1979 he sought $30 million in financing for a proposed Texas land development project. Prior to September 1979, defendant Pinzak suggested that defendant Edward Silha (Silha), d/b/a Professional Consultants Unlimited (PCU), and defendant Robert E. Young (Young), an associate or partner of Silha, might be able to procure fi-

nancing for the project.

On September 22, 1979, PCU mailed to Lapeyre a proposed "letter of intent" which provided that PCU would obtain financing for the project. A fee of $52,500, to be paid in advance, would be refunded by PCU if it failed to procure a written commitment for financing within 30 days.

On September 28, 1979, according to Lapeyre, he sent a letter to Silha wherein Lapeyre stated his intention to establish an "independent escrow agent" for payment of the fee to PCU. On October 30, 1979, Lapeyre signed and returned PCU's letter of intent. On October 31, 1979, Lapeyre mailed to Pinzak a letter and the cashier's check in the amount of $52,500. The letter stated, in part:

> "Enclosed is the cashier's check made out to you and Mr. Isador which will be released to Professional [sic] Consultants when they have secured the loan commitment *** as per our various communications with Mr. Silha.
>
> In order to be perfectly clear on your and the bank's obligations, I would like for Mr. Isador to drop me a letter along with all copies that he has regarding the loan commitment stipulations with Professional [sic] Consultants.
>
> * * *
>
> We would appreciate if Mr. Isador would send us a Statement of Condition of his bank."

Lapeyre's counterclaim concluded by alleging that PCU had never obtained a written loan commitment and the Bank, therefore, was obligated to return the money to him.

On July 30, 1981, Pinzak filed his answer to the Bank's complaint and to Lapeyre's counterclaim, together with Pinzak's counterclaim against the other defendants. Pinzak contended that "at all times pertinent" he acted as Lapeyre's "agent" in negotiations with PCU regarding financing for Lapeyre's project. During negotiations Lapeyre had suggested to Pinzak that PCU's fee be placed in an escrow account pending receipt of the loan commitment. According to Pinzak, PCU rejected this suggestion and demanded payment of the $52,500 fee in advance. Pinzak alleged that Lapeyre than "induced" Pinzak to pay to PCU the fee from Pinzak's own funds, while promising to reimburse Pinzak. Pinzak alleged that he personally paid to Silha the $52,500, "on behalf of Lapeyre." Attached to Pinzak's counterclaim was a copy of the face of Pinzak's personal check dated October 25, 1979, in the sum of $52,500 payable to PCU.

Pinzak further alleged that the cashier's check deposited with the Bank "was intended and promised as a reimbursement to Pinzak"

from Lapeyre for the money which Pinzak had advanced to PCU "for Lapeyre's benefit as Lapeyre's agent." Pinzak also alleged that "with Lapeyre's knowledge and consent" Pinzak requested from PCU additional security to guarantee PCU's refund of Pinzak's money in the event the loan commitment was not obtained. Thereupon, on October 26, 1979, Pinzak received a check from PCU in the amount of $52,500, payable 30 days from its issuance in the event the commitment was not forthcoming. A copy of the face of PCU's check to Pinzak was attached to Pinzak's counterclaim.

PCU never obtained the loan commitment. Prior to the date on which its check to Pinzak was made payable, PCU closed the account on which the check was drawn. Based upon these facts, Pinzak asked the court to award to him alone the funds on deposit with the Bank.

On August 25, 1981, Lapeyre filed his answer to Pinzak's counterclaim, denying each allegation save one, to which he pled insufficient knowledge.

Of the three remaining defendants, PCU, Silha and Young, only Silha, d/b/a PCU, filed an appearance. Subsequently defaults were entered against these three defendants. The record further indicates these defendants filed for bankruptcy during the present trial proceedings.

Only Lapeyre and Pinzak requested the court to award to them the funds in issue.

On September 22, 1982, Lapeyre filed a motion for summary judgment with a supporting affidavit. In his motion Lapeyre argued that in an interpleader action "the court's task is to determine rights to a specific fund, and not to determine the sum total of the parties' alleged liabilities to each other." Lapeyre contended that only he had a legitimate claim to the $52,500 on deposit because he provided the cashier's check which created the fund. Pinzak was only a "trustee" of the fund and thus had no personal interest in the fund. At most, Lapeyre asserted, Pinzak has an independent claim against Lapeyre or against PCU which should be pursued in an action separate from the interpleader.

Lapeyre's affidavit, filed in support of his motion for summary judgment, stated, in relevant part:

"On or about November 26, 1979 [affiant] agreed to pay *** Edward J. Pinzak a finders fee of $225,000.00 in the event [he] obtained a $30,000,000.00 loan for a proposed real estate development in Texas. ***

On or about October 31, 1979, [affiant] forwarded to Edward J. Pinzak a cashier's check in the amount of $52,500.00 payable

to Edward J. Pinzak and Howard Isador, Trustee & Amalgamated Trust & Savings Bank of Chicago as Escrow Agent."

On October 7, 1982, Pinzak filed a memorandum in opposition to Lapeyre's motion for summary judgment together with his supporting affidavit. In his memorandum Pinzak contended that the pleadings raised issues of material fact including: whether Pinzak was Lapeyre's "agent"; whether Lapeyre "induced" Pinzak to advance to PCU the $52,500 fee "for Lapeyre's benefit," based on Lapeyre's promise to repay Pinzak; whether the interpleaded fund was "intended" to reimburse Pinzak for the funds Pinzak allegedly advanced to PCU "on behalf of Lapeyre." Pinzak further asserted "the exhibits before the court indicate that Pinzak and Isador were the depositors of the fund at issue. Isador has made no claim to the funds deposited and Pinzak is, therefore, the only depositor before the court claiming an interest in the fund." Pinzak also stated that Lapeyre had "refused" to submit to a deposition and, therefore, should not be awarded summary judgment.

Pinzak's affidavit stated, in relevant part:

"That on or about November 6, 1979 [Pinzak] deposited the sum of FIFTY-TWO THOUSAND FIVE HUNDRED ($52,500.00) DOLLARS in an account at the Amalgamated Trust and Savings Bank. ***

* * *

That the sole purpose of the account was to guarantee the reimbursement of said FIFTY-TWO THOUSAND FIVE HUNDRED ($52,500.00) DOLLARS to Edward Pinzak for funds advanced for the benefit of Louis Lapeyre by Edward Pinzak."

In a reply memorandum Lapeyre argued that Pinzak "attempts to cloud the issue by discussing allegations that, at most, relate to possible claims for damages against Lapeyre" and that Pinzak "does not and cannot" contend that he "furnished' any part of the fund.

On March 21, 1983, the trial court entered an order providing, in part:

"Louis [Lapeyre] clearly has established his right to the escrow fund held by Amalgamated. The letter to Amalgamated establishing the escrow account contained instructions to the effect that the fund was to be disbursed to PCU only upon Louis' receipt of the desired financing. It is apparent that Edward [Pinzak] and Howard [Isador] deposited the $52,500 in the Amalgamated escrow on [Lapeyre's] behalf as his agents; the court notes the use of the term "trustee" in this respect. [Pinzak] plainly admits that the funds in the escrow were provided

exclusively by [Lapeyre].

Apparently [Pinzak's] argument is with Silha. Silha d/b/a PCU, did not earn his right to this fund and does not assert a claim to it. If Silha is liable to [Pinzak], that liability will have to be met from his general assets. The Amalgamated escrow clearly constitutes a specific fund to which Silha is not entitled.

Wherefore, it is hereby ordered that [Lapeyre's] motion for summary judgment on Amalgamated's complaint in interpleader is granted, and Amalgamated is directed to disburse the contents of the subject escrow fund accordingly."

On April 14, 1983, Pinzak filed a timely notice of appeal from the above order.[1]

On appeal Pinzak contends the trial court erred in granting summary judgment to Lapeyre because (1) Lapeyre failed to appear for a deposition and (2) material issues of fact existed.

In regard to the first contention, the record shows that in April 1982 Pinzak's attorneys mailed to Lapeyre's attorneys a notice of Lapeyre's deposition, set for June 11. On May 4, 1982, Lapeyre's attorney wrote to Pinzak's attorney that "Lapeyre is not a resident of Illinois [and] [t]herefore financial arrangements will have to be made prior to the deposition." Lapeyre's attorney received no further response save a letter dated July 27, 1982, from Pinzak's attorneys advising that they would "contact" Lapeyre's attorneys regarding the scheduling of Lapeyre's deposition.

Had Pinzak wished to depose Lapeyre prior to adjudication of the motion for summary judgment, he could have petitioned the court pursuant to Supreme Court Rule 203 (87 Ill. 2d R. 203) which authorizes the court to designate the site of a deposition as well as to "impose any terms and conditions that are just, including payment of the reasonable expenses of the deponent." Alternatively, Pinzak could have proceeded pursuant to Supreme Court Rule 191(b) (87 Ill. 2d R. 191 (b)), which provides:

"(b) When Material Facts Are Not Obtainable by Affidavit. If the affidavit of either party contains a statement that any of the *material facts which ought to appear in the affidavit are*

---

[1]The summary judgment order was entered on March 21, 1983. Pinzak's Notice of Appeal was filed on April 14, 1983. On April 15, 1983, Pinzak filed a motion requesting the trial court to stay distribution of the fund pending Pinzak's appeal. In an order entered on that same day denying Pinzak's motion, the court noted that it had "been advised that the funds at issue were distributed to Louis Lapeyre on April 11, 1983."

*known only to persons whose affidavits affiant is unable to procure* by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the *court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing papers or documents in the possession of those persons* or furnishing sworn copies thereof. The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of papers and documents so furnished, shall be considered with the affidavits in passing upon the motion." (Emphasis added.)

■ Since Pinzak failed to employ these procedures provided for the taking of a deposition, his contention that summary judgment was improperly entered because Lapeyre was not deposed must be rejected. See *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 387, 425 N.E.2d 1055, 1059.

Pinzak next contends the trial court erred in entering summary judgment for Lapeyre because material issues of fact remained. He argues that the trial court's summary judgment order was based on facts disputed by Pinzak's "verified pleading and affidavit."

The standards which guide the adjudication of motions for summary judgment have been oft repeated:

"It is established that summary judgment should be granted only when the pleadings, depositions and admissions on file, together with the affidavits (if any) show there was no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 312 N.E.2d 601.) However, summary judgment is a drastic remedy and should be granted only when the movant's right thereto is clear and free from doubt (*Marshall v. City of Chicago Heights* (1978), 59 Ill. App. 3d 986, 376 N.E.2d 657), and, in passing on the motion, the trial court must construe the documents presented strictly against the movant and liberally in favor of the opponent (*Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293). Further, the opponent may rely upon reasonable inferences which may be drawn from the materials considered on the motion in the determina-

tion of whether a genuine issue of material fact exists. *Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184." *Molloy v. Santucci Construction Co.* (1979), 78 Ill. App. 3d 249, 397 N.E.2d 125.

"Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate." (*Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 991, 438 N.E.2d 614, 619.) In a motion for summary judgment inferences may be drawn from undisputed facts (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 374 N.E.2d 1302) and where reasonable persons cannot draw from such facts contrary inferences, summary judgment should be allowed. *Blaylock v. Country Mutual Insurance Co.* (1980), 85 Ill. App. 3d 1042, 407 N.E.2d 849.

While parties opposing summary judgment are not required to *prove* their case at the summary judgment stage, they must provide a factual basis which would *arguably* entitle them to judgment. *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 425 N.E.2d 1055.

Our review of the record indicates the following undisputed facts: Lapeyre provided the cashier's check which constituted the fund in issue; Lapeyre's name appears as a "buyer" of the cashier's check; Pinzak did not purchase, or provide any funds used to purchase the cashier's check; the cashier's check was made payable to "Edward J. Pinzak and Howard Isador, Trustee & Amalgamated Trust & Savings Bank of Chicago as escrow agent"; the account into which the check was deposited was opened in the names "Edward J. Pinzak, Trustee, and Amalgamated Trust and Savings Bank, Escrow Agent"; the cashier's check was endorsed "/s/ Edward J. Pinzak, Trustee, /s/ Howard Isador, Trustee, Amalgamated Trust and Savings Bank, as Escrow Agent, by /s/ Howard Isador, /s/ William [unreadable]"; the Bank never received any escrow agreement or instructions; PCU did not secure a written commitment of financing for the project; no party other than Pinzak and Lapeyre claimed the fund; the only written agreement calling for Lapeyre to pay to Pinzak a finder's fee if Pinzak was able to secure financing for the project was executed on November 26, 1979, some four weeks after Lapeyre forwarded to Pinzak the cashier's check and accompanying letter of explanation, requesting him to establish the escrow account.

■ Our review of the record compels us to conclude that the trial court did not err in granting Lapeyre's motion for summary judgment. The undisputed facts and the inferences to be drawn therefrom establish that the fund was provided solely by Lapeyre and was in-

tended only for payment to PCU if and when it secured the loan commitment for Lapeyre's real estate project. Notwithstanding Lapeyre's unexplained failure to provide escrow instructions to the Bank, it appears clear that upon the failure of PCU to secure the loan commitment the fund should be returned to Lapeyre.

■ The purpose of interpleader is the determination of the right to a specific fund.

> "An interpleader action is appropriate where several persons have claims to the same subject matter and such claims may result in multiple liability. (Ill. Rev. Stat. 1975, ch. 110, par. 26.2.) In *Chicago Title & Trust Co. v. Czubak* (1976), 42 Ill. App. 3d 349, 352, 356 N.E.2d 118, 120, we held that when there are conflicting claims to a deposited fund the stakeholder should place the money before the court to avoid acting at his own peril. In *Lincoln Trust & Savings Bank v. Nelson* (1931), 261 Ill. App. 370, 373, the appellate court held that the bank was entitled to file a complaint of interpleader where the ownership of the funds on deposit was in dispute." (*Drabik v. Lawn Manor Savings & Loan Association* (1978), 65 Ill. App. 3d 272, 275, 382 N.E.2d 333, 335.)

In an interpleader action the court's task is not to determine the sum total of a party's liability, nor claims independent of the fund; rather, the court's task is to determine rights to the particular fund which is the subject of the interpleader action. See *Hebel v. Ebersole* (7th Cir. 1976), 543 F.2d 14.

In determining whether summary judgment is appropriate, the court is to consider only evidentiary facts, and not conclusions of law. (*Zannis v. Lake Shore Radiologists, Ltd.* (1982), 104 Ill. App. 3d 484, 432 N.E.2d 1108.) Facts unrelated to the essential elements of plaintiff's cause of action are not material, and regardless of how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. *Alexander v. Standard Oil Co.* (1981), 97 Ill. App. 3d 809, 423 N.E.2d 578.

Here, Pinzak's unsupported conclusory allegations that he was acting as Lapeyre's "agent" and that the latter allegedly "induced" him to pay to PCU $52,500 from Pinzak's own funds, "on behalf of Lapeyre," and Pinzak's contention that Lapeyre "should" have made the cashier's check payable to him alone, are matters appropriately left for resolution in a separate proceeding. They are not relevant to the issue presented by the interpleader action, in that they do not establish a basis for a claim to this fund.

At oral argument before this court, the attorneys for both Pinzak

and Lapeyre agreed that the counterclaims filed by their clients herein related solely to the award of the fund itself. Neither party attempts to establish liability on any other basis. Thus there remain no issues which require further determination in this action.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.