(No. 77-CC-0756—<span>■■■■■</span>

FIRST NATIONAL BANK OF SPRINGFIELD, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 20, 1990.*

GIBBS & GREEN (EDWARD R. GREEN, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM WEBBER, Assistant Attorney General, of counsel), for Respondent.

1

## OPINION

Montana, C.J.

### Facts

The facts in this cause appear as follows:

On August 17, 1970, Respondent entered into a general contract with Tal Rauhoff, Inc. (Rauhoff) for

construction on the State Capitol Building in Springfield, Illinois (Exhibit A). On September 10, 1970, Rauhoff entered into a subcontract agreement with the Rhodes & Rodier Co., Claimant, for lathing and plastering work (Exhibit C). As work progressed, Rauhoff submitted periodic applications for payment to Respondent. Twenty-five applications were submitted between January 15, 1971, and December 18, 1973. These are Exhibits E1 through E25 herein. Each application was a request for payment for a portion of work which according to Rauhoff, had been completed since the last application; each application listed the amount of a subcontractor's work, the total of previous pay requests pertaining to work performed by the subcontractor and the amount of the present pay request. The Respondent would pay the amount requested to Rauhoff less a percentage retainage (15% for Exhibits E1 to E21 and 10% for applications E22 to E25) which was held back by the Respondent.

Rauhoff had the responsibility to pay Claimant and other subcontractors as required by the general contract. Each of the subcontractors was requested to submit a statement for forwarding to the Respondent stating that all prior statements had been paid when new statements were issued.

The last two applications (Exhibits 24 and 25) made by Rauhoff to Respondent made no application for work done by Claimant. (Subsequently, the Sangamon County Court in No. 246-74 held that in fact $26,000.00 of work had been done by Claimant that should have been included in these applications.) The last application by Rauhoff for work done by Claimant was dated May 30, 1973. Claimant contends that it worked on the project between September 26, 1973, and January 12, 1974.

Commencing on October 25, 1973, Claimant made written requests to Rauhoff for work done from September 25, 1973, to December 26, 1973. (Exhibits "G", "H", and "I"). The total sum was $119,485.76. When Claimant received no payment from Rauhoff, it filed a notice of lien in accordance with section 23 of the Illinois Mechanics Lien Act for $136,563.17. This lien was filed in the Illinois Secretary of State's Office on February 26, 1974 (Exhibit J). The amount of lien exceeded the pay request of Claimant because it contends it worked on the project until January 12, 1974. Respondent then terminated its contract with Rauhoff. One of the grounds for termination was Claimant's filing of a lien (Exhibit L).

On April 29, 1974, Claimant filed suit in Sangamon County Circuit Court (No. 246-74) against Rauhoff and its bonding company, the Fidelity and Deposit Company of Maryland for $136,563.00. The First National Bank of Springfield was assignee of the Claimant. Rauhoff replied that it was not liable to a subcontractor until payment had been made by Respondent and that none of the sums requested by Claimant had been paid to it by Respondent (Exhibit N). Claimant filed a motion for partial summary judgment and on January 14, 1975, the Court granted it in the sum of $23,400.00. Payment was received by Claimant on January 30, 1975. Rauhoff never appealed this order (Exhibit "O").

On March 21, 1975, Claimant filed another motion for summary judgment against Rauhoff (Exhibit "P") and retained an independent architect to verify that it had performed additional work on the project.

Initially, on April 21, 1975, the Court granted Claimant's motion for summary judgment against Rauhoff (Exhibit "S"). A motion for reconsideration was filed by

Rauhoff on April 25, 1975. On that same day, the Sangamon County Court entered an order which held:

"That the unpaid amount of work done by [Plaintiff] under its contract with [Rauhoff] is One Hundred Sixteen Thousand Five Hundred and Thirty-Nine and 7/16 Dollars ($116,539.17). (Exhibit T.)"

The court then held that Rauhoff was not liable for this sum. This was because Rauhoff had not received payment from Respondent for the work which the court determined was done by Claimant. Under the terms of the subcontract Rauhoff was not liable for payment to Claimant until Rauhoff was paid by Respondent.

On January 27, 1976, the Secretary of State for Illinois filed a complaint in interpleader in the Sangamon County Circuit Court, No. 41-76 (Exhibit "U"). Rauhoff, Claimant and other subcontractors were named as defendants. The State (Respondent) prayed for permission to deposit $258,191.89 with the court so it could determine the amount of money which should be distributed to Rauhoff and each of its subcontractors. This sum consisted primarily of retainage from the general contract, *i.e.*, sums held back by Respondent when it paid Rauhoff. The Respondent stated that it retained an architect to authorize the "completion status" of the $2,437,000.00 project. The architect analyzed the project as a whole and did not break it down as to values of work performed by individual subcontractors. The retainage plus a finding by the architect that $42,854.00 was unpaid on the project resulted in a sum of $258,191.89 which the Respondent sought to have distributed by the interpleader court.

Thereafter, Claimant filed a motion for summary judgment in the interpleader action alleging priority because of the order of the court of April 21, 1975, in the original suit (246-74) which found that Claimant had done $116,537.17 worth of work. Objections were filed

by other defendants to this motion and it was never granted. (This is apparently so because most of the interpleader fund was retainage.)

On May 28, 1976, Claimant filed a motion for summary judgment in the original suit, 246-74, while the interpleader cause was pending, stating that Rauhoff had admitted that it had been paid certain sums by Respondent for work done by Claimant. On June 10, 1976, the court in 246-74 partially granted Claimant's motion and awarded it $10,297.00; Rauhoff paid this sum to Claimant within two months.

On the same day, June 10, 1976, the interpleader court, in cause 41-76, entered an order allowing Respondent to deposit the sum of $258,191.89 as an interpleader fund.

The order also provided:

"That, Plaintiff, MICHAEL J. HOWLETT, Secretary of State, State of Illinois, is herewith discharged from any and all liability with respect to the FUND detailed hereinabove in this Order, but in no event is any Party-Defendant herein precluded by this ORDER from prosecuting in the Court of Claims of the State of Illinois any action which may of right be brought in that Court relative to matters arising out of the contract specified herein. (See Exhibit 'X')."

On September 20, 1976, the interpleader court entered a partial distribution order (Exhibit Z) on behalf of Claimant in the amount of $22,932.71. This amount reflected work performed by Claimant that Rauhoff had previously included in its applications and change order request to Respondent. On January 24, 1977, in disposition of the interpleader action, the court entered a memorandum opinion. The court found that Claimant could not recover further from the interpleader fund for the following reasons:

"The Court * * * finds that of the sums deposited with this Court these are the only monies approved by the Architect and therefore any additional claims made by these defendants can not be considered in *this* lawsuit and

as to *these* funds. (Emphasis added.) (Paragraph three of page two of Memorandum of Opinion.)."

The court then ordered the remainder of the fund to be distributed to Rauhoff. On May 4, 1977, Claimant filed its complaint in this court. Thereafter, the parties to cause No. 246—74 executed a stipulation and motion for dismissal dated November 12, 1977; and filed with the Sangamon County clerk on January 25, 1978. (Exhibit BBB). The stipulation stated in part that the final adjudication in the interpleader cause No. 41—76 determined that Claimant had no further cause of action against Rauhoff or its bonding company in cause No. 246—74. The stipulation included the dismissal of cause No. 246—74 with prejudice to Claimant.

On January 25, 1978, the Court, as a result of this filing, entered an order stating in part as follows:

"This cause coming on to be heard upon the written Stipulation and Motion of the parties hereto, by their respective attorneys; and it appearing to the Court that final adjudication by the Court in the Interpleader case of Michael J. Howlett, Secretary of State, State of Illinois plaintiff, vs. Tal Rauhoff, Inc., et al, including Rhodes & Rodier Company, No. 41—76, in this Court, are such that the plaintiff in this action No. 246—74 has no claim or cause of action against said defendants herein, FIDELITY AND DEPOSIT COMPANY OF MARYLAND and TAL RAUHOFF, INC., or either of them, for or in respect to any of the matter or things alleged in plaintiff's complaint in this action No. 246—74."

Respondent was never a party to No. 246—74. In addition to the above facts, the Claimant by this Court's subpoena, obtained a letter from the Attorney General's office, dated November 19, 1975, which was a request to the Secretary of State for his determination as to how much money should be deposited in a proposed interpleader fund. Also under our subpoena is a letter from Peat, Marwick Mitchell and Company, dated October 1, 1975, in answer to the Secretary of State's request for an outside opinion as to how much was due and owing on this contract. This letter states that the

procedures used were not in accordance with generally accepted auditing standards and therefore Peat, Marwick Mitchell and Co. could express no opinion.

The issue now before us is whether or not the State is liable to the Claimant for the unpaid lathing and plastering work done by the Rhodes and Rodier Company on the State Capitol Building as a subcontractor and third-party beneficiary of the contract.

## Decision

From the above it is of record that Respondent's architect never made any determination of the amount owed to Claimant or any other subcontractor, that Claimant's architect did verify the work, that Respondent did not know how much was owed to Claimant, and that the Sangamon County court did make a finding of fact that Claimant was owed the sum of $116,539.00. Subsequent to that finding the Claimant, through litigation, reduced this amount to $79,932.00. While not agreeing that this sum is due Claimant should Claimant prevail, the Respondent did not actually dispute that figure and offered nothing from which we determine any lesser amount may be due. This Court is not bound by the finding of the Sangamon County Circuit Court. However, we find that the preponderance of the evidence in the record here is that this is the sum which Claimant is owed if Claimant prevails.

The Respondent's primary argument at law is that the order of the interpleader court was dispositive of any claim that this subcontractor might have against the State. However, the authorities hold that an interpleader action cannot be used to "freeze" the rights of the parties who have causes of action which are in excess of funds deposited. (*Jefferson Standard Insurance Co. v. Craven*

(1973), 365 F. Supp. 861, citing *State Farm Fire & Casualty Co. v. Tashire* (1967), 386 U.S. 523.) These cases interpret Federal Rule 22(1); the Illinois interpleader statute (Ill. Rev. Stat., ch. 110, par. 26(2)) is based on Federal Rule 22(1) and is virtually the same. The current Illinois statute is Ill. Rev. Stat., ch. 110, par. 2—408. In *Amalgamated Trust and Savings Bank v. Silha* (1984), 121 Ill. App. 3d 1033, 460 N.E.2d 372, the court held that in an interpleader action a court's task is not to determine the sum total of a party's liability nor claims independent of the fund but rather to determine rights to the fund.

The interpleader court made no specific finding as to the total sum due to Claimant. The interpleader fund was primarily a retainage fund which was owed to many subcontractors. Clearly, Claimant would not be entitled to another subcontractor's retainage. The court itself stated that the order in interpleader was not dispositive of the rights of any party to any sum. (See *Order in Interpleader*, No. 41—76 of June 10, 1976.) Further the interpleader court in a pretrial order of August 13, 1976, stated the sum proposed for each subcontractor and a notation whether the sum was retainage. Significantly, no such notation appears after the Claimant's name. This was also so for several other subcontractors. It therefore appears that the court declined to give an opinion as to what Claimant's award pertained to.

From all of the above we conclude that the Claimant's right to proceed in this court was not barred by the order in interpleader.

The Respondent also argues that Claimant is a subcontractor of the State with no right to a recovery and cites *R. D. Lawrence Construction Co. v. State* (1982), 35 Ill. Ct. Cl. 514, from the Illinois Court of Claims.

However, *Lawrence* stated that a subcontractor cannot generally proceed against an owner outside the Mechanics Lien Act "in the absence of any allegation that [the subcontractors] are third-party beneficiaries under the principal contract."

Claimant alleged that it is a third-party beneficiary of the contract and to meet the *Lawrence* test cites *O'Keefe v. State* (1939), 10 Ill. Ct. Cl. 480, which cites *Carson Pirie Scott & Co. v. Parrett* (1932), 346 Ill. 252. The standard in *Carson Pirie Scott* is stated as follows:

"The rule is settled in this state that, if a contract is entered into for the direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct, he may sue on the contract; if incidental he has no right of recovery thereon. This rule has been announced without variation in numerous cases decided by this court."

This doctrine has been affirmed many times. (See, *e.g., Town & Country Bank v. Canfield* (1977), 55 Ill. App. 3d 91, 370 N.E.2d 630.) It is considered settled doctrine. The clauses of the general contract which are presented to support the Claimant's assertion that it is a third-party beneficiary within the *Carson* doctrine are stated as follows:

"This Contractor shall submit to the Architect, in five copies an application in a form prescribed for each payment, and a sworn statement of all amounts due, or to become due for services, labor, material, or contracts, and *receipt of other vouchers showing his payments for materials and labor including payments to subcontractors.* (Emphasis added.) Such applications shall be submitted at least 10 days before each payment falls due, and the Contractor shall, before the first application, submit to the Architect a schedule of values of the various parts of the work, including quantities, aggregating the total *payment to subcontractors*, made out in such form, and if required, supported by such evidence, as to its correctness, as the Architect may direct. This schedule, when approved by the Architect, shall be used as a basis for Certificate of Payment, unless it is found to be in error." (Emphasis added.)

*General conditions of the Contract between Tal Rauhoff and the State of Illinois*, page E/10 (See Exhibit "B").

The above clauses appear sufficient to establish the Claimant's right to be considered by the court as a third-party beneficiary of the general contract.

Our finding that the Claimant is properly before this Court does not end the case. That the Sangamon County Circuit Court found that Claimant had not been paid a sum of money for work performed does not mean that Claimant is now entitled to an award of that sum here. The Respondent was not a party to that suit nor is this Court bound by the findings of fact. Even though we have accepted that sum does not mean Claimant is entitled to be awarded it.

As a third-party beneficiary, the Claimant has rights under the contract. Under the contract Rauhoff was to have billed the Respondent for work performed by the Claimant. There is no dispute that Rauhoff did not do so. It also appears that the Respondent paid out during the course of the performance of the contract and later in the interpleader action all that appeared to be due under the contract. We are unable to determine why Rauhoff did not bill the Respondent for Claimant's work. It is not entirely clear to us whether the Claimant, as a third-party beneficiary, is due payment for the work. On this issue Respondent has not made clear a defense based on the contract either. Much about this case is unclear. Although the record is lengthy, neither party has made it complete.

Regardless, now necessary to any award in the Court of Claims based on a breach of contract theory is information, as part of the record, showing that sufficient funds were appropriated to have covered the breach. See discussion in *Loewenberg/Fitch Partnership v. State* (1986), 38 Ill. Ct. Cl. 227, 252-54 and *Ude, Inc. v. State* (1982), 35 Ill. Ct. Cl. 384. Nowhere in the record

are we able to find this information and, therefore, we will be unable to make an award. Necessary for payment of any award by the Court in the amount sought by the Claimant in this type of claim is approval by the General Assembly as evidenced by the appropriation of funds. For purposes of possible further consideration of this case by the General Assembly, we find that the State has received the benefit of the work performed by the Claimant, that the value of the work performed by the Claimant is $79,932.00, and that the Claimant has not received compensation for its work. Any appropriation, if made, should be for First National Bank of Springfield as assignee of Rhodes & Rodier Co.

Claim denied.